1  Dean A. Hanley, Esq.  (State Bar No. 169507)
   Deborah R. Rosenthal, Esq. (State Bar No. 184241)
2  PAUL AND HANLEY LLP
   1608 Fourth Street, Suite 300
3  Berkeley, California 94710
   Telephone: (510) 559-9980
4  Facsimile:  (510) 559-9970
   dhanley@paulandhanley.com
5  drosenthal@paulandhanley.com

6  Attorneys for Plaintiffs

7

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

                   SAN FRANCISCO DIVISION
11

12 JERI REDMAN, individually and as        ) Case No.: 08-cv-03013-BZ
   successor-in-interest to RONALD REDMAN, )
13 deceased; and JERI REDMAN, AMY          ) **MEMORANDUM OF POINTS AND**
   REDMAN, DAVID C. REDMAN, MARK           ) **AUTHORITIES IN SUPPORT OF**
14 REDMAN and PAUL REDMAN, as legal        ) **PLAINTIFFS' MOTION AND MOTION**
   heirs of RONALD REDMAN, deceased,       ) **FOR REMAND AND FOR COSTS AND**
15                                         ) **EXPENSES INCURRED AS A RESULT**
                                           ) **OF REMOVAL**
16         Plaintiffs,                     )
                                           ) ─────────────────────────────
17 vs.                                     ) [28 U.S.C. § 1447(c); FRCP 7(b); ND CA Local Rules
                                           ) 7-2, 7-4 & 7-5]
18 A.W. CHESTERTON, et al.,                )
                                           ) Date:       September 5, 2008
19         Defendants.                     ) Time:       9:00 a.m.
                                           ) Courtroom:  2, 17th Floor
20 ─────────────────────────────          ) Judge:      Jeffrey White
                                           )
21

22

23

24

25

26 //
   //
27 //

28 ─────────────────────────────────────────────────────────
   **NOTICE OF MOTION AND MOTION FOR REMAND AND FOR COSTS AND EXPENSES INCURRED AS A RESULT OF**
   **REMOVAL**                                                                    PAGE i
   S:\Clients\Plaintiff\BSR\Redman, Ronald 10267\Fed Court Action\VIAD remand motion - Points and Auth.doc

# TABLE OF CONTENTS

I.    INTRODUCTION ....................................................................................................1

II. STATEMENT OF ISSUES TO BE DECIDED.....................................................2

III. STATEMENT OF FACTS AND STATE COURT PROCEEDINGS....................3

   A.    Ronald Redman's exposure to asbestos from Griscom Russell Distilling Plants Aboard Navy Ships ........................................................................................................3

   B.    Griscom Russell's sale of distilling plants for commercial and industrial use...................4

   C.    The duty to warn imposed on Griscom Russell by the U.S. Navy and defendant's failure to provide the required warnings..........................................................................4

   D.    Plaintiffs' limited claims against Viad and notice to Viad that federal subject matter jurisdiction does not exist...............................................................................5

   E.    Costs incurred as a result of Viad's removal ................................................................6

IV. LEGAL ARGUMENT...........................................................................................6

   A.    VIAD FAILS TO ESTABLISH FEDERAL SUBJECT MATTER JURISDICTION PURSUANT TO THE FEDERAL OFFICER REMOVAL STATUTE.......................6

   B.    VIAD HAS NOT SHOWN AND CANNOT SHOW A COLORABLE FEDERAL DEFENSE TO PLAINTIFFS' CLAIMS. ...............................................................7

      1.    A government contractor seeking immunity for injuries arising out of products sold to the United States military must prove that a significant conflict exists between state and federal law before the three-prong test for immunity may be applied.....................7

      2.    There is no significant conflict between federal interest and state law where the product procured by the government was also widely sold to private industry for commercial purposes. ..............................................................................................9

      3.    There is no significant conflict between federal interest and state law with regard to Viad's duty to warn because the U.S. Navy imposed essentially the same duty to warn as California products liability law imposes with respect to asbestos-containing products. ......12

   C.    VIAD HAS NOT SHOWN THAT IT ACTED AT THE DIRECTION OF A FEDERAL OFFICER OR THAT THERE IS CAUSAL NEXUS BETWEEN ANY SUCH ACTS AND PLAINTIFFS' CLAIMS................................................................................14

      1.    Viad cannot demonstrate that it acted pursuant to the Navy's directions nor that there is a causal nexus between the Navy and plaintiffs' failure to warn claims.......................15

2.    Plaintiffs' express disclaimer eliminates any possible basis for federal subject matter jurisdiction..........................................................................................15

D.    THIS COURT HAS DISCRETION TO AWARD PLAINTIFFS REASONABLE COSTS INCURRED AS A RESULT OF VIAD'S REMOVAL UNDER THE CIRCUMSTANCES PRESENT HERE..........................................................................................17

1.    VIAD removed this case without an objectively reasonable basis for removal....17

2.    VIAD removed this case under unusual circumstances evidencing abuse of the system..........................................................................................18

3.    Plaintiffs' costs and expenses incurred are just and reasonable............................20

CONCLUSION..........................................................................................20

# TABLE OF AUTHORITIES

28 U.S.C. § 1442(a)(1)..............................................................................................................1,7

*Anderson v. Owens-Corning Fiberglas* (1991) 53 Cal.3d 987.................................................5

*Mesa v. California*, 489 U.S. 121, 129, & 131-132 (1989)........................................................7

*Boyle v. United Technologies Corp.*, 487 U.S. (1988)..................................................7,8,9,11,12

*Hawaii Federal Asbestos Cases*, 960 F.2d 806, 811 (9th Cir. 1992)........................................10

*Hawaii Federal Cases, supra*, 960 F.2d at 812.......................................................................11

*Sanner v. Ford Motor Company*, 364 A.2d 43 (N.J. Super. Law Div. 1976)...........................11

*Sundstrom v. McDonnell Douglas Corp.*, 816 F.Supp. 587, 589 (N.D. Cal 1993)....................11

*Neilsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450 (9th Cir. 1990)...........................11

*In re New York City Asbestos Litigation*, 144 Misc.2d 42, 46 (N.Y. Sup. Ct. 1989).................12

*In re Federal Asbestos Cases*, 960 F.2d 806, 813 (9th Cir. 1992).............................................13

*Butler v. Ingalls Shipbuilding*, 89 F.3d 582, 586 (9th Cir. 1996)...........................................13

*Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362, 367 (5th Cir. 1995).......................16

*Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 & n. 7, 107 S. Ct. 2425, 2429 & n. 7, 96 L. Ed. 2d 318 (1987)..................................................................................................................16

*Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir. 1976)..................................15

*Westbrook v. Asbestos Defendants (BHC)*, 2001 U.S. Dist LEXIS 11575 at pp. 6-7 (N.D. Cal. July 31, 2001)...............................................................................................................................15

*Sheppard v. Northrop Grumman Systems Corp.*, 2007 U.S. Dist. LEXIS 38463 at p. 20 (E.D. La. May 24, 2007)...............................................................................................................................16

*Wehr v. Pheley*, 2000 U.S. Dist. LEXIS 2375 (N.D. Cal. 2000) at p. 16...................................17

*Morris v. Bridgestone Firestone Inc.*, 985 F.2d 238, 240 (6th Cir. 1993).................................17

*Moore v. Permanente Medical Group, Inc.*, 981 F.2d 443, 448 (9th Cir. 1992).........................17

*Martin v. Franklin Capital Corp.* (2005) 546 U.S. 132, 141....................................................17

*Mertan v. E.R. Squibb & Sons, Inc.*, 581 F. Supp. 751 (C.D. Cal. 1980).............................18,19

*Gotro v. R&B Realty Group* (9th Cir. 1995) 69 F.3d 1485, 1487-1488....................................20

I.    **INTRODUCTION**

This Court lacks subject matter jurisdiction over this action, which plaintiffs initiated in California state court.

Viad, sued herein as successor-in-interest to Griscom Russell Company, contends in its removal petition that the federal courts have original jurisdiction pursuant to 28 U.S.C. § 1442(a)(1) because defendant was acting under an officer or agency of the United States government when it committed the acts allegedly giving rise to plaintiffs' injuries. But Viad fails to present any facts or evidence supporting this contention.

This Court does not have subject matter jurisdiction pursuant to 28 U.S.C. § 1442(a)(1) because (1) Viad does not and cannot assert any colorable federal defense to plaintiffs' claims, (2) plaintiffs do not allege any claims against Viad arising out of acts committed at the direction of a federal officer, and (3) there is no causal nexus between Viad's alleged conduct giving rise to plaintiffs' claimed injuries and acts performed by Viad under color of federal office.

Specifically, in this survival and wrongful death action, plaintiffs allege that Viad contributed to decedent Ronald Redman's cancer and death by its failure to adequately warn him of the extraordinary health hazard that existed during ordinary maintenance and repair of defendant's asbestos-containing marine distilling plants, which were manufactured for sale to both the United States Navy and to private industry for commercial use. Plaintiffs expressly limit their claims against Viad to negligent and strict liability failure to warn and expressly disclaim causes of action for injuries arising out of acts taken by Viad at the direction of a federal officer.

To assert government contractor immunity as a defense, Viad must show that the state laws which plaintiffs seek to enforce significantly conflict with a uniquely federal interest in the product alleged to have harmed plaintiffs. Viad has not made and cannot make such a showing

1  because (1) the products at issue here, marine distilling plants, were not procured by the U.S.

2  Navy based on any unique federal interest but rather were the same products Viad sold to private

3  industry for commercial purposes, and (2) the U.S. Navy required the same warnings that state

4  tort law requires of Viad with regard to these products—namely, that Viad warn of serious health

5  hazards associated with its products.  Absent a significant conflict between federal interest and

6  state law, the government contractor defense does not apply.

7      Moreover, plaintiffs expressly disclaimed any cause of action or claim for relief arising

8  out of defendant's actions taken at the direction of a federal officer.  Because federal officer

9  jurisdiction does not exist unless plaintiffs allege claims arising out of acts committed at the

10  direction of a federal officer (which plaintiffs do not allege here), and because Viad states no

11  other basis for removal jurisdiction, this case must be immediately remanded to state court.

12      Immediate remand is necessary because Viad threatened to seek transfer of this action to

13  the Multi-District Asbestos Litigation Panel in the Eastern District of Pennsylvania.  Because this

14  case does not belong in federal court, let alone federal court in Pennsylvania, plaintiffs would be

15  severely prejudiced if the case is transferred.  Plaintiffs therefore requests that this Court enter an

16  immediate order preventing such transfer until the Motion to Remand is decided.

17      Plaintiffs also request that the Court order defendant to pay plaintiffs $12,545 in just and

18  reasonable costs incurred as a result of Viad's removal.  No objectively reasonable basis exists

19  for believing that there is federal subject matter jurisdiction over this action, nor does Viad

20  present any factual or evidentiary basis for its contention that removal jurisdiction exists.  Viad

21  was well aware of the facts shown herein to negate removal jurisdiction when it removed this

22  case based on a patently deficient Notice of Removal.  These actions constitute unusual

23  circumstances warranting an award of costs.

## II.    STATEMENT OF ISSUES TO BE DECIDED

25      B.  Does federal subject matter jurisdiction exist where, as here, (1) plaintiffs' claims

26          are limited to Viad's failure to warn of the serious health hazard posed by its

27          commercially available asbestos containing distilling units, and (2) plaintiffs

expressly disclaimed any and all causes of action based on acts undertaken at the direction of a federal officer?

C. Is a costs award warranted in this matter because Viad lacked an objectively reasonable basis for removal and/or because unusual circumstances surround defendant's removal of this case?

## IV.    STATEMENT OF FACTS AND STATE COURT PROCEEDINGS

### A. Ronald Redman's exposure to asbestos from Griscom Russell Distilling Plants Aboard Navy Ships

Plaintiffs filed this survival and wrongful death action on April 16, 2008, alleging that Viad, as successor in interest to Griscom Russell, is liable for injuries arising out of its failure to warn decedent Ronald Redman of the danger of cancer-causing asbestos exposure that existed during foreseeable maintenance and repair of its products. (Plaintiffs' Complaint, attached as Exhibit A to the Declaration of Deborah R. Rosenthal filed herewith, at 3:7-11, 4:8-18 & 14:7-8; Paul & Hanley LLP Master Complaint, attached to the Rosenthal Declaration as Exhibit B, at 1:1-25:17 & 97:1-101:24.)

Specifically, plaintiffs allege that from approximately 1974 to 1984, decedent Ronald Redman was exposed to asbestos while working in the machinery spaces aboard Naval ships and that the exposure occurred from the disturbance of asbestos in Griscom Russell distilling plants as these asbestos-containing products were being overhauled, repaired, removed, and replaced in his vicinity. [1]  Plaintiffs allege that these distilling plants were manufactured and sold to the U.S. Navy by Griscom Russell, without adequate warning of the serious hazard to health and life that existed during ordinary and foreseeable use, maintenance and repair of the products. (Exhibit A, ¶ 6, at 2:17-24; Exhibit B at 1:1–25:17 & 97:1–101:24.)

---

[1] See General Order 129 Standard Interrogatory No. 1, attached as Exhibit C, and Plaintiffs Response thereto, attached as Exhibit D; Exhibit D at 96:22-26, 97:22–99:22, 230:16-26, 231:16–233:11, 241:22–244:19, 248:5-12, 249:4–251:2, 297:22-26, & 298:22–300:15. Plaintiffs offer their interrogatory responses for the non-hearsay purpose of showing the limited scope of plaintiffs' factual allegations against Viad, and notice to defendant of same, and not for the truth of the facts alleged.

**B. Griscom Russell's sale of distilling plants for commercial and industrial use**

In the 1960s, Griscom Russell and its successors sold asbestos-containing marine distilling plants (comprised of feedwater heaters, condensers and evaporators) to private industry as well as to the United States Navy. (1961 Baldwin-Lima-Hamilton Annual Report, attached to the Rosenthal Declaration as Plaintiffs' Exhibit E, at pp. 1 & 9; 1962 Baldwin-Lima-Hamilton Annual Report, attached to the Rosenthal Declaration as Plaintiffs' Exhibit F, at p. H-9; Griscom-Russell Distilling Plant Operating Instructions Manual for distilling plants installed on DD666 Class Destroyers, attached to the Rosenthal Declaration as Exhibit G, at "Distilling Plant Index" page immediately following title page; see also "Instructions for Operation, Care and Maintenance of Griscom Russell Navy Type Low Pressure Distilling Plants," attached as Exhibit H.)

Defendant designed, manufactured and sold these sea water distillation plants for marine as well as land-based use. Defendant also sold replacement and repair parts for marine equipment on existing vessels. Defendant operated a laboratory in Harbor Island, North Carolina, for continued research on the subject of sea water distilling units that could produce pure water from sea water. Indeed, defendant conducted research and development and marketed and sold its distilling plants to what defendant saw as a growing market for equipment that distilled and purified sea water and brackish water for reuse as fresh water (Exhibit E at p. 2; Exhibit F at H-9 and H-15; Defendant's Advertisements in Marine Engineering Log magazine, attached as Exhibit M.)

**C. The duty to warn imposed on Griscom Russell by the U.S. Navy and defendant's failure to provide the required warnings**

By virtue of its manufacture and sale of asbestos-containing products for utility, marine, and industrial uses—including both land-based and ship-based distilling units that converted sea water to pure water—Viad had a duty to warn of the known and knowable hazards associated with foreseeable use and maintenance of these products under state law. (Exhibits A & B.)

This duty, imposed by California state law, is substantively the same as the duty to warn imposed on Viad by the United States Navy, as set forth in Military Specification 15071D

1    (SHIPS), effective 1961, which required manufacturers of equipment supplied to the Navy to

2    provide warnings if the equipment could result in personal injury or loss of life. (MIL-M-

3    15071D, attached to the Rosenthal Declaration as Exhibit I, at Section 3.3.6.)

4         Griscom Russell offered some instruction to users and consumers on the safe and

5    effective operation and maintenance of its distilling units but failed to warn of the safety hazard

6    of asbestos inhalation and failed to provide precautionary instructions that would have enabled

7    those operating, maintaining, or repairing the distilling units or those in the vicinity thereof how

8    to use the product without suffering asbestos exposure. (Griscom Russell instruction manuals for

9    Navy and "Navy type" distilling plants, attached to the Rosenthal Declaration as Exhibits G &

10   H.)

### D. Plaintiffs' limited claims against Viad and notice to Viad that federal subject matter jurisdiction does not exist

11

12        Plaintiffs' limited their allegations against Viad to claims for failure to warn, both

13   negligence and strict product liability, as those causes of action are defined in *Anderson v.*

14   *Owens-Corning Fiberglas* (1991) 53 Cal.3d 987 and California Civil Jury Instructions. (Exhibit

15   A, ¶ 6, at 2:20-24.) Plaintiffs' explicitly stated in their complaint that they will not pursue any

16   other theory of liability against Viad and expressly disclaimed any cause of action or recovery

17   against Viad for any injuries resulting from exposure to asbestos caused by Viad's acts

18   committed at the direction of a federal officer. (Exhibit A, ¶¶ 6-7, at 2:22-3:4.)

19        Nevertheless, on June 2, 2008, after receiving plaintiffs' summons, complaint, and

20   responses to General Order 129 Interrogatories further delineating the limited nature and scope

21   of plaintiffs' claims against Viad, Viad asked plaintiffs for a waiver of costs in exchange for a

22   dismissal or for plaintiffs' waiver of their failure to warn claims and right to pursue recovery

23   from Viad for injuries arising out of decedent's exposure to asbestos at all federal job sites,

24   including military vessels. (Proof of Service of Summons, Complaint, and Interrogatory

25   Responses, attached as Exhibit J; 6/2/08 Letter from Viad counsel to Plaintiffs' Counsel,

26   attached as Exhibit K.) Viad advised that if plaintiffs refused to dismiss Viad or waive their

27   claims arising out of Viad's failure to warn aboard Navy ships, Viad would remove this case to

28

1    federal court, "whereupon Viad Corp. will then transfer the action to the MDL matter styled *In re*

2    *Asbestos Product Liability Litigation,"* a multi-district asbestos litigation panel in federal district

3    court for the Eastern District of Pennsylvania.  (Exhibit K.)

4         Plaintiffs responded that Viad had no basis for removal because Viad could not assert the

5    government contractor immunity defense based on the allegations in plaintiffs' complaint.

6    Plaintiffs explained that without a colorable federal defense, federal subject matter jurisdiction

7    does not exist.  (6/16/08 Letter from Plaintiffs' Counsel to Viad Counsel, attached as Exhibit L.)

8         Viad removed this action to federal court the following day.

9    **E.  Costs incurred as a result of Viad's removal**

10        As set forth in the attached declarations of counsel, plaintiffs have incurred $9,745 to date

11   in reasonable attorneys' fees as a result of Viad's removal.  (Rosenthal Declaration, ¶¶ 19 & 22;

12   Declaration of Dean A. Hanley, attached to the Rosenthal Declaration as Exhibit O.)  In addition,

13   plaintiffs conservatively estimate that they will incur at least an additional $2,800 in attorneys'

14   fees reviewing Viad's Opposition and preparing a reply.  (Rosenthal Declaration, ¶ 21.)  These

15   costs do not include copying costs, PACER costs, or additional fees and costs incurred if the

16   Court requires oral argument at a hearing of this matter.

17                        **IV.    LEGAL ARGUMENT**

18
     **A.  VIAD FAILS TO ESTABLISH FEDERAL SUBJECT MATTER**
19   **JURISDICTION PURSUANT TO THE FEDERAL OFFICER REMOVAL**
     **STATUTE.**
20
         VIAD removed this case pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(a), contending
21
     that the federal district courts have original jurisdiction over the subject matter "because VIAD,
22
     as the alleged successors-in-interest [sic] to GRISCOM RUSSELL/DIAL CORPORATION, was
23
     acting under an officer or agency of the United States government, namely the United States
24
     Navy." (Viad's Notice of Removal, ¶ 6.)
25
         To establish removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1), defendant must (1)
26
     allege a "colorable federal defense," (2) demonstrate that defendant's "acts [done] in
27
     performance of his official duty constitute the basis" for plaintiffs' claims, and (3) show "a
28

1  causal connection between [the acts] done under asserted official authority" and the plaintiffs'

2  claims. *Mesa v. California*, 489 U.S. 121, 129, & 131-132 (1989). Defendant must demonstrate

3  all three elements by sufficient supporting evidence because federal courts are courts of limited

4  jurisdiction, which have power only as to those matters set forth in Article III, Section 2, Clause

5  1, of the U.S. Constitution. Accordingly, removal pursuant to the federal officer statute based on

6  an inadequate showing that all three jurisdictional requirements are met "raises serious

7  constitutional doubt." *Mesa, supra*, 489 U.S. at 136-137.

8      In the pending matter, Viad fails to demonstrate <u>any</u> of the elements necessary to

9  establish subject matter jurisdiction pursuant to the federal officer statute. Defendant does not

10 allege what federal defense purportedly applies, does not support its assertion that Viad acted

11 under the direction of the United States Navy with any evidence, does not explain what actions it

12 took under direction of a federal officer, does not allege that these acts constitute the basis for

13 plaintiffs' claims, and does not establish a causal connection between defendant's acts done

14 under official authority and plaintiffs' alleged injuries.

15     In short, there is no basis for this Court to exercise jurisdiction over this matter.

16 Immediate remand is required to protect plaintiffs' constitutional right to due process.

17
18
### B.  VIAD HAS NOT SHOWN AND CANNOT SHOW A COLORABLE FEDERAL DEFENSE TO PLAINTIFFS' CLAIMS.

19
20
#### 1.  A government contractor seeking immunity for injuries arising out of products sold to the United States military must prove that a significant conflict exists between state and federal law before the three-prong test for immunity may be applied.

21 In *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), the United States Supreme

22 Court explained the circumstances under which a private contractor who supplies specialized

23 equipment to the United States pursuant to government contract can seek immunity from liability

24 imposed by state tort law.

25     In *Boyle*, a Marine helicopter pilot drowned after the helicopter crashed at sea, and the

26 pilot was unable to escape because the escape hatch was designed to open out instead of in. 487

27 U.S. at 502-503. The family of the helicopter pilot sued the helicopter manufacturer for design

28

1   defect relating to the escape hatch, and the manufacturer claimed it was immune from state tort

2   law because it had built the helicopter to military specifications. *Id.*

3       As a threshold matter, the Court reasoned that where a "'significant conflict' exists

4   between an identifiable 'federal policy or interest and the [operation] of state law,' [citation] or

5   the application of state law would 'frustrate specific objectives' of federal legislation," a

6   defendant who designed a product according to federal government specifications may claim

7   immunity by asserting the "Government contractor defense." *Id.* at 507.  The Court then laid out

8   the three-prong test which, if met, would allow contractors to prevail on this defense, *id.* at 512,

9   and remanded the case to the Ninth Circuit Court of Appeals for clarification of its decision that

10  the government contractor defense barred plaintiffs' claims in that case. *Id.* at 513.

11      The relevant issue discussed in *Boyle* that is raised by Viad's removal based on federal

12  officer jurisdiction is what constitutes a "significant conflict" between federal interest and state

13  law.  Evidence that the United States procured the equipment pursuant to government contract

14  does not "end the inquiry.  That merely establishes a necessary, not a sufficient, condition for the

15  displacement of state law." *Id.* at 507.

16      In *Boyle,* "petitioner alleged that Sikorsky had defectively designed the copilot's

17  emergency escape system: the escape hatch opened out instead of in (and was therefore

18  ineffective in a submerged craft because of water pressure), and access to the escape hatch

19  handle was obstructed by other equipment." *Id.* at 503.  After extensive discussion of the

20  necessity of showing that a "significant conflict" exists, the U.S. Supreme Court looked at the

21  product at issue and its alleged defect—a helicopter with an unreasonably dangerous escape

22  hatch mechanism—and, noting that the escape hatch mechanism itself was the very thing the

23  federal government requested and directed the manufacturer to create pursuant to its

24  specifications, found that a "significant conflict" existed because "the state-imposed duty of care

25  that is the asserted basis of the contractor's liability (specifically, the duty to equip helicopters

26  with the sort of escape-hatch mechanism petitioner claims was necessary) is precisely contrary to

27

28

1    the duty imposed by the Government contract (the duty to manufacture and deliver helicopters

2    with the sort of escape-hatch mechanism shown by the specifications)." *Id.* at 509.

3           The Court further explained that "it is easy to conceive of an intermediate situation, in

4    which the duty sought to be imposed on the contractor is not identical to one assumed under the

5    contract, but also not contrary to any assumed:"

6

7           If, for example, the United States contracts for the purchase and installation of an air-
            conditioning unit, specifying the cooling capacity but not the precise manner of
8           construction, a state law imposing upon the manufacturer of such units a duty of care to
            include a certain safety feature would not be a duty identical to anything promised the
9           Government, but neither would it be contrary.

10

11   *Id.*    **In such circumstances, "[t]he contractor could comply with both its contractual**

12   **obligations and the state-prescribed duty of care.  No one suggests that state law would**

13   **generally be pre-empted in this context."** *Id.* (emphasis added).

14          Following *Boyle,* Viad's attempt to assert the government contractor defense based solely

15   on the fact that Griscom Russell sold its injury-producing products to the U.S. Navy fails.  Viad

16   must show that a significant conflict exists between the government's interest in the product and

17   the duties imposed by state law on the manufacturer with regard to the product.  Viad has not

18   done so in its removal papers.

19          Moreover, Viad cannot show such a conflict for the reasons set forth below.

20          **2.      There is no significant conflict between federal interest and state law**
                     **where the product procured by the government was also widely sold**
21                   **to private industry for commercial purposes.**

22          The government contractor defense affords immunity only to suppliers of equipment

23   specifically designed for military needs, as directed by the federal government, and not for

24   commercial or industrial equipment procured by the government for general use on military

25   vessels. *Boyle, supra,* 487 U.S. 500, 509.  This is because the federal government is immune

26   from liability for injuries arising out its own specialized equipment, and "[i]t makes little sense to

27   insulate the Government against financial liability for the judgment that a particular feature of

28

1  | military equipment is necessary when the Government produces the equipment itself, but not

2  | when it contracts for the production." *Id.* at 512. Thus, where the federal government directs a

3  | manufacturer to produce equipment with special features that serve a military interest, the

4  | manufacturer may assert immunity to products liability claims arising under state law in the same

5  | manner and to the same extent as the United States itself could.

6  | But "[w]here the goods ordered by the military are those readily available, in

7  | substantially similar form, to commercial users, the military contractor defense does not apply."

8  | *In re Hawaii Federal Asbestos Cases,* 960 F.2d 806, 811 (9th Cir. 1992).

9  | As the Ninth Circuit explained:

> The *Boyle* Court noted that the military makes highly complex and sensitive decisions regarding the development of new equipment for military usage. Allowing the contractors who are hired to manufacture that equipment to be sued for the injuries caused by it would impinge unduly on the military's decisionmaking process. The contractors would either refuse to produce the military equipment for the Government or would raise their prices to insure against their potential liability for the Government's designs. *Boyle at 512.*

> These same concerns do not exist **in respect to products readily available on the commercial market. The fact that the military may order such products does not make them "military equipment."** The products have not been developed on the basis of involved judgments made by the military but in response to the broader needs and desires of end-users in the private sector. The contractors, furthermore, already will have factored the costs of ordinary tort liability into the price of their goods. That they will not enjoy immunity from tort liability with respect to the goods sold to one of their customers, the Government, is unlikely to affect their marketing behavior or their pricing.

20 | *Id.* (emphasis added).

21 | In other words, since the product being procured by government contract is designed and

22 | manufactured for the general public, no conflict can be said to arise between state laws

23 | governing such consumer products and the requirements set forth in federal government

24 | contracts. The federal government played no significant role in creating the injurious product or

25 | causing it to be placed into the stream of commerce. In these circumstances, the government

26 | contractor defense does not apply.

1    Applying this reasoning, the United States Supreme Court observed that the manufacturer

2  of a helicopter designed with a particular type of escape-hatch mechanism needed for military

3  applications could assert the defense, but the manufacturer of "a quantity of stock helicopters

4  that happen to be equipped with escape hatches" cannot assert the defense, even though the Navy

5  procured the helicopters pursuant to government contract. *Boyle, supra,* 487 U.S. at 509.

6    Similarly, the Ninth Circuit held that **asbestos insulation procured by the government**

7  **pursuant to contract:**

8    **does not represent military equipment entitling its manufacturers to the protections
     of the military contractor defense** [where the evidence shows] that the insulation sold
9    by [defendants] to the Navy was the very same insulation which those companies
     marketed to commercial buyers. This insulation was not manufactured with the special
10   needs of the military in mind. To the contrary, the military constituted a relatively
     insignificant purchaser of products that were primarily designed for applications by
11   private industry."

12

13  *In re Hawaii Federal Cases, supra,* 960 F.2d at 812 (emphasis added).

14    Additional examples of "military equipment" held to be potentially subject to the

15  government contractor defense include: a jeep manufactured in accordance with Army

16  specifications that no roll bars or seat belts be installed, *Sanner v. Ford Motor Company,* 364

17  A.2d 43 (N.J. Super. Law Div. 1976), and a helicopter equipped with a defective ejection seat

18  where the evidence showed the original design proposed by the manufacturer was changed by

19  the Air Force prior to manufacture. *Sundstrom v. McDonnell Douglas Corp.,* 816 F.Supp. 587,

20  589 (N.D. Cal 1993).

21    Examples of "ordinary consumer product[s] purchased by the armed forces" to which the

22  government contractor defense has been held not to apply include:  paint, the fumes of which

23  caused a former employee of the Army Corps of Engineers to suffer extensive brain damage

24  (*Neilsen v. George Diamond Vogel Paint Co.,* 892 F.2d 1450 (9th Cir. 1990) and asbestos

25  insulation cement. *In re New York City Asbestos Litigation,* 144 Misc.2d 42, 46 (N.Y. Sup. Ct.

26  1989) ("Additional support for rejecting the military contractor defense here derives from the

27  fact that asbestos was not exclusively used in military equipment. Since asbestos was used as

28

insulation material for products other than military hardware, it is not by definition strictly

military equipment.")

Just as the asbestos-containing products in *In re Hawaii Federal Asbestos Litigation* and

*In re New York City Asbestos Litigation* were not designed or manufactured with substantial

input from the U.S. government for specialized military purposes, Viad's asbestos-containing

distilling plants also are not "military equipment" designed with unique military applications in

mind.  On the contrary, Viad marketed and sold its marine distilling units widely to private

industry for commercial purposes.  (See, e.g., Plaintiffs' Exhibits E, F, H & O.)  The U.S. Navy

was but one of its many customers, and its commercially available products are not automatically

transformed into "military equipment" for the purposes of the immunity defense simply because

the government purchased them.

Here, the Navy's interest in Viad's distilling plants was substantially similar as private

purchasers' interest in the products.  The government contractor defense does not apply to such

products.

> **3.    There is no significant conflict between federal interest and state law with regard to Viad's duty to warn because the U.S. Navy imposed essentially the same duty to warn as California products liability law imposes with respect to asbestos-containing products.**

In *Boyle,* the U.S. Supreme Court explained that if the U.S. purchased an air-conditioning

unit and did not specify certain safety features, a state law imposing a duty on the manufacturer

to provide those safety features would not be contrary to any federal interest, and the government

contractor defense would not be available to the manufacturer sued in state court for injuries

arising out of the manufacturer's failure to provide those safety features.  487 U.S. at 509.

Nearly a decade after *Boyle,* the Ninth Circuit applied the same reasoning to preclude

application of the government contractor defense in a California products liability failure to warn

case:

> Whereas the government contractor's defense may be used to trump a design defect claim by proving that the government, not the contractor, is responsible for the defective design, that defense is inapplicable to a failure to warn claim in the absence of evidence

that in making its decision **whether to provide a warning** against use of the padeye to lift the platform, or some other suitable warning, Ingalls was "acting in compliance with 'reasonably precise specifications' imposed on [it] by the United States." *In re Federal Asbestos Cases,* 960 F.2d 806, 813 (9th Cir. 1992), quoting *Boyle,* 487 U.S. at 512; *In re Joint E. & S. Dist. New York Asbestos Litig.,* 897 F.2d 626, 629-32 (2d Cir. 1990). [**12]  As the Second Circuit stated in *Joint E. & S. Dist.,*

> **In a failure-to-warn action, where no conflict exists between requirements imposed under a federal contract and a state law duty to warn, regardless of any conflict which may exist between the contract and state law design requirements,** *Boyle* **commands that we defer to the operation of state law.**

*Butler v. Ingalls Shipbuilding,* 89 F.3d 582, 586 (9th Cir. 1996) (boldface and underscoring added).

In the pending matter, Viad presents no evidence that it based its decision not to warn of the asbestos hazards associated with its distilling units on any specifications provided by the federal government.

Furthermore, Viad cannot present such evidence because the U.S. Navy required manufacturers to warn of serious health hazards associated with their products.   Specifically, Military Specification 15071D (SHIPS) pertaining to "Manual, Service (Instruction Books) for Shipboard Electrical and Mechanical Equipment," Section 3 (Requirements), subsection 3.3.6 regarding "Notes, cautions and warnings" provides:

> Notes, cautions and warnings should be used to emphasize important and critical instructions.  The use should be as sparing as is consistent with real need.  When used, notion, cautions and warnings should immediately precede the applicable instructions and shall be selected in accordance with the following definitions:
>
> (a) "NOTE" – An operating procedure, condition, etc., which it is essential to highlight.
> (b) "CAUTION" – Operating procedures, practices, etc., when if not strictly observed, will result in damage or destruction of equipment.
> (c) **"WARNING" – Operating procedures, practices, etc., which will result in personal injury or loss of life if not correctly followed.**

(Plaintiffs' Exhibit I, filed herewith.)

In order for the federal interest and the state law to be in conflict so as to render the military contractor defense applicable in this case, Viad would have to prove that the U.S. Navy prohibited manufacturers from giving warnings that would alert decedent and others of the safety

1    hazard of asbestos exposure that existed during routine service and repair of Griscom Russell

2    distillers. Viad cannot prove this, because the U.S. Navy did not prohibit such warnings. On the

3    contrary, the Navy specifically required manufacturers providing equipment for use aboard Navy

4    ships to warn of health hazards that would lead to personal injury or loss of life.

5            Furthermore, the U.S. Navy relied on manufacturers and worked in conjunction with

6    them, including Griscom Russell, to provide safety warnings, repair manuals, and operating

7    instructions. ("Naval Machinery," attached as Exhibit N to the Rosenthal Declaration, at

8    prefatory pages.) Indeed, Griscom Russell was one of many manufacturers that worked in

9    conjunction with U.S. Navy to create a reference manual titled "Naval Machinery," first

10   published in 1935 and revised and reprinted numerous times over the years, which the Navy used

11   as part of a collection of texts to provide persons serving aboard Naval vessels with information

12   about the types of machinery thereon, its operation, and its maintenance. (Exhibit P at prefatory

13   pages.)

14           To the extent that the U.S. Navy relied on and required manufacturers providing

15   equipment for use on board Navy ships to place warnings on their products when operating

16   practices would cause injury or loss of life, the federal policy interest regarding the products at

17   issue here is directly aligned with the interest advanced by California products liability law.

18   Absent any conflict, let alone a significant conflict, the government contractor defense does not

19   afford immunity to liability arising out of a manufacturer's duty to warn as established by state

20   law. And because plaintiffs allege in this action solely for Viad's failure to warn, Viad cannot

21   assert the government contractor defense to plaintiffs' claims.

22   ### C. VIAD HAS NOT SHOWN THAT IT ACTED AT THE DIRECTION OF A FEDERAL OFFICER OR THAT THERE IS CAUSAL NEXUS BETWEEN ANY SUCH ACTS AND PLAINTIFFS' CLAIMS

23

24           Establishing a colorable federal defense is only one of three elements necessary to

25   establish removal jurisdiction pursuant to 28 U.S.C. § 1442(a)(1). Defendant also must show

26   that plaintiffs' claims arose out of acts defendant took at the direction of a federal officer and that

27

28

1  there is a causal nexus between defendant's acts in that capacity and plaintiffs' alleged injuries.

2  *Mesa, supra* 489 U.S. at 131-132.

3       Viad's removal petition asserts nothing more than the bare allegation that Viad "was

4  acting under an officer or agency of the United States government, namely the United States

5  Navy." (Viad's Notice of Removal at 2:21-25.) Defendant fails to show what actions it took at

6  the Navy's direction and how those actions gave rise to plaintiffs' claims. Viad also fails to

7  show a causal nexus between any of its actions and plaintiffs' alleged injuries.

8      **1.**     **Viad cannot demonstrate that it acted pursuant to the Navy's directions**
   **nor that there is a causal nexus between the Navy and plaintiffs' failure to**
9                **warn claims**

10       Plaintiffs' claims in this action are limited to failure to warn. Viad cannot show that it

11  acted at the direction of a federal officer when it failed to warn Ronald Redman about the

12  dangers of asbestos exposure because the Navy did not issue specifications nor requirements in

13  government contracts that prohibited Viad from simultaneously complying with its contractual

14  obligations and the state law duty to warn. Since Viad cannot show that actions taken pursuant

15  to government contract or specification gave rise to plaintiffs' claims, it cannot meet the first

16  prong of *Mesa* necessary to establish federal officer jurisdiction.

17       For the same reason, Viad cannot show that actions it took pursuant to a federal officer's

18  direction caused plaintiffs' injuries. Plaintiffs allege that their injuries arose out of Viad's failure

19  to warn, and there is no evidence that the Navy precluded warnings. Thus, if the failure to warn

20  caused plaintiffs' injuries, the actions that caused plaintiffs' injuries were not actions taken at the

21  direction of a federal officer.

22      **2.**     **Plaintiffs' express disclaimer eliminates any possible basis for federal**
   **subject matter jurisdiction**
23

24       Reduced to its most basic elements, plaintiffs claim a right of action based on theories

25  that are cognizable under California state law. Plaintiffs expressly disclaimed any cause of

26  action or recovery arising out of injuries resulting from acts or omissions committed by

27

28
NOTICE OF MOTION AND MOTION FOR REMAND AND FOR COSTS AND EXPENSES INCURRED AS A RESULT OF
REMOVAL                                              PAGE 15
S:\Clients\Plaintiffs\R\Redman, Ronald 10267\Fed Court Action\VIAD remand motion - Points and Auth.doc

1    defendant at the direction of an officer of the U.S. Government.  (Plaintiffs' Complaint at 2:20-

2    3:3.)

3          Federal courts frequently give effect to such disclaimers because jurisdiction cannot be

4    based on claims not alleged.  *See, e.g., Carpenter v. Wichita Falls Indep. Sch. Dist.*, 44 F.3d 362,

5    367 (5th Cir. 1995)("if a plaintiff indeed has a viable state law claim, he may depend on it alone

6    and thereby defeat attempts at removal. *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 391 & n. 7,

7    107 S. Ct. 2425, 2429 & n. 7, 96 L. Ed. 2d 318 (1987) (noting that, because the plaintiff is the

8    'master of the claim,' 'he or she may avoid federal jurisdiction by exclusive reliance on state

9    law') (footnote omitted)"); *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.

10   1976)("the plaintiff has the prerogative of determining the theory of his action and, so long as

11   fraud is not involved, he may defeat removal to the federal courts by avoiding allegations which

12   provide a basis for the assertion of federal jurisdiction"); *Westbrook v. Asbestos Defendants*

13   *(BHC)*, 2001 U.S. Dist LEXIS 11575 at pp. 6-7 (N.D. Cal. July 31, 2001)("The court sees no

14   reason not to hold plaintiffs in this case to their waiver of claims arising out of work done on

15   federal jobsites and vessels. This waiver, therefore, justifies remand. If plaintiffs later attempt to

16   reverse course, and are allowed to do so by the state court despite their express waiver, Todd can

17   always file for removal once again."); and *Sheppard v. Northrop Grumman Systems Corp.*, 2007

18   U.S. Dist. LEXIS 38463 at p. 20 (E.D. La. May 24, 2007).

19         Here, as in the above cited cases, plaintiffs' claims against Viad rest entirely on state law.

20   There is no federal law or defense at issue, and therefore the federal courts lack subject matter

21   jurisdiction over the action.  Indeed, Viad indirectly concedes that a plaintiff may waive a claim

22   to escape removal in its June 2, 2008, request that plaintiffs waive all of their claims arising out

23   of exposures on Naval vessels as a means of avoiding removal.  Although Viad misconstrued the

24   law of federal subject matter jurisdiction, the point remains clear:  where there is no federal law

25   or defense at issue, there is no federal subject matter jurisdiction.

26

27

28

## D. THIS COURT HAS DISCRETION TO AWARD PLAINTIFFS REASONABLE COSTS INCURRED AS A RESULT OF VIAD'S REMOVAL UNDER THE CIRCUMSTANCES PRESENT HERE

When a district court remands a case due to defects in the removal procedure or upon a finding of lack of subject matter jurisdiction, the Court may also require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal. 28 U.S.C. § 1447(c). When considering whether or not to award costs and fees, the Court "should consider 'the nature of the removal and the nature of the remand'" and may award fees incurred when such an award "is 'fair and equitable under all the circumstances.'" *Wehr v. Pheley,* 2000 U.S. Dist. LEXIS 2375 (N.D. Cal. 2000) at p. 16 (citing to Commentary on 1988 Revision by David D. Siegel at 28 U.S.C.A. § 12147, p. 58 (West Supp. 1992) and *Morris v. Bridgestone Firestone Inc.,* 985 F.2d 238, 240 (6th Cir. 1993)). A showing of bad faith by the removing defendant is not necessary. *Moore v. Permanente Medical Group, Inc.,* 981 F.2d 443, 448 (9th Cir. 1992). However, "some showing beyond the bare fact of remand is necessary to justify an award of fees." *Uriarte v. R & J Machinery,* 2000 U.S. Dist. LEXIS 18084 (N.D. Cal. 2000)(citations omitted). Specifically, a District Court may properly award attorneys' fees incurred as a result of removal where "unusual circumstances" exist or where the removing party lacked "an objectively reasonable basis" for removal. *Martin v. Franklin Capital Corp.* (2005) 546 U.S. 132, 136.

Furthermore, an award of attorney's fees pursuant to 28 U.S.C. § 1447(c) is collateral to the decision to remand, and the district court retains jurisdiction after remand to entertain plaintiffs' motion for attorney's fees and costs pursuant to that statute. *Moore v. Permanente Medical Group, Inc.* (9th Cir. 1992) 981 F. 2d 443, 445.

### 1. VIAD removed this case without an objectively reasonable basis for removal

In considering whether an award is "just" under 28 U.S.C. § 1447(c), "the standard for awarding fees should turn on the reasonableness of the removal." *Martin v. Franklin Capital*

*Corp.* (2005) 546 U.S. 132, 141.  In *Martin,* Chief Justice John Roberts explained in a

unanimous United States Supreme Court decision:

> The process of removing a case to federal court and then having it remanded back to state court delays resolution of the case, imposes additional costs on both parties, and wastes judicial resources.  Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.  The appropriate test for awarding fees under *§ 1447(c)* should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

546 U.S. at 140.

In this case, plaintiffs made clear to Viad that their claims were limited to injuries arising out of Viad's failure to warn, that their claims were limited to VIAD's distilling plants which were sold commercially as well as to the U.S. Navy, and that they do not seek damages arising out of acts taken at the direction of a federal officer.  Plaintiffs clearly set forth the parameters of their claims in their complaint, their responses to standard interrogatories, and in a follow up letter responding to Viad's baseless removal threat.  (Exhibits A-D & L.)  Plaintiffs' factual and evidentiary showing in this regard reveals that there is no objectively reasonable basis for removal of this action.  Moreover, Viad's Notice of Removal, lacking any of the allegations essential to establishing federal subject matter jurisdiction or any supporting evidence, further reveals that Viad had no objectively reasonable basis for removal.  An award of costs is proper in this context.

### 2. **VIAD removed this case under unusual circumstances evidencing abuse of the system.**

Even if a defendant had reasonable grounds for removal, so that fees ordinarily would be denied, district courts retain discretion to consider whether unusual circumstances warrant a departure from the rule in a given case.  *Martin, supra,* 546 U.S. 132, 141.

For example, in *Mertan v. E.R. Squibb & Sons, Inc.,* 581 F. Supp. 751 (C.D. Cal. 1980), the District Court awarded costs and fees pursuant to 28 USC § 1447(c) where defendant twice removed a case to federal court despite lack of subject matter jurisdiction.  The second removal and remand occurred on essentially the same set of facts as the first:  Both removal petitions

were filed weeks after trial in state court had begun, and complete diversity did not exist because

one of the defendants, whose citizenship was "uncontested and indeed incontestable," remained

"a viable defendant" in the action because no written dismissal had extinguished that defendant

from the case. 581 F.Supp. 751, 752-753. The District Court found that such a removal, and

especially two such removals under the same circumstances, "is a poorly disguised and flagrant

misuse of the process and facilities of this United States District Court," "presents an egregious

example of abuse in an abortive attempt at 'judge-shopping' in the Federal Court system," and

perpetrates "a grave injustice ... upon the plaintiff." *Id.* at 753. The Court awarded "the

necessary and reasonable expenses incurred by [plaintiff] because of the unwarranted delay in

the trial of the State proceedings and the forced preparation of opposing pleadings caused by

these oppressive and futile actions in this Federal Court initiated by defendant and defendants'

counsel." *Id.*

Similar circumstances exist here. Viad threatened plaintiffs with removal if plaintiffs did

not dismiss Viad from the state court action or stipulate to waiving plaintiffs' claims for

exposures occurring on federal job sites including Naval vessels. Viad further threatened to seek

transfer of this case to Pennsylvania Multi-District Litigation, which would seriously

inconvenience plaintiffs, cause them great expense, and delay trial. (Exhibit K.) Viad did so

despite clear limitations in plaintiffs' complaint and interrogatory responses showing that no

colorable federal defense and no federal subject matter jurisdiction exist with regard to this

action. (Exhibits A-D.)  Whatever uncertainties may have existed in plaintiffs' allegations and

discovery responses were eliminated by plaintiffs' letter to Viad explaining the limited nature

and extent of plaintiffs' allegations. (Exhibit L.)

Yet with full knowledge that there was no basis for removal, Viad carried through with

its threat to remove this action because plaintiffs would not stipulate to waiving its claims against

Viad arising out of decedent's work around Viad distilling plants on Navy ships. Viad's request

that plaintiffs stipulate away their claims upon threat of removal where no objectively reasonable

basis for removal exists, and Viad's removal of this action the day after plaintiffs refused to

1   waive their claims against Viad or dismiss their case against Viad, constitutes unusual

2   circumstances warranting an award of costs and fees pursuant to 28 USC § 1447(c).

### 3.  Plaintiffs' costs and expenses incurred are just and reasonable

Pursuant to section 1447(c), the District Court may require payment of attorney's fees even thought the litigant in question is a contingency fee litigant. *Gotro v. R&B Realty Group* (9th Cir. 1995) 69 F.3d 1485, 1487-1488.

In this case, plaintiffs incurred $9,745 in costs and fees to date as a result of Viad's removal. (Rosenthal Declaration at ¶¶ 19 & 22; Hanley Declaration, attached as Exhibit M.) These fees are reasonable in light of the work performed, the customary hourly rates charged by attorneys with plaintiffs' counsel's years of experience working in the San Francisco Bay Area on complex litigation matters, and also in light of the fact that this amount does not include additional costs such as copying costs, secretarial costs, or PACER fees. Plaintiffs conservatively estimate that they will incur an additional $2,800 in attorneys fees reviewing defendant's opposition papers and preparing a reply brief. (Rosenthal Declaration, ¶ 21.) Plaintiffs therefore request that the Court issue an order awarding $12,545 in costs. This amount also does not include the additional costs and fees that will be occurred if counsel is required to appear at the hearing of this matter if the Court deems a hearing necessary.

### CONCLUSION

Viad removed this case based on the allegation that the federal officer statute supported removal jurisdiction. But Viad's removal petition fails to establish any of the elements necessary to support a finding that subject matter jurisdiction based on the federal officer statute exists here. On this record, the case must be remanded to state court.

Furthermore, this Court should award plaintiffs $12,545 in costs and fees pursuant to Section 1447(c) because Viad's removal petition is defective and deficient, there is no objectively reasonable basis for removal, and Viad's threat to remove this case despite the

1  absence of removal jurisdiction unless plaintiffs waived or dismiss their claims against Viad

2  constitutes unusual circumstances warranting a costs award.

3

4  DATED:  July 3, 2008                              PAUL & HANLEY LLP

5

6                                                    By:

7                                                         Deborah R. Rosenthal
                                                         Attorneys for Plaintiffs

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28