1  WHITNEY A. DAVIS, SBN 149523
   MARIA S. ROSENFELD, SBN 186116
2  CHARTER DAVIS, LLP
   1730 I Street, Ste. 240
3  Sacramento, CA 95814
   (916) 448-9000
4  (916) 448-9009

5  Attorneys for Defendant VIAD CORP,
   individually and as alleged successor-in-interest to
6  GRISCOM-RUSSELL COMPANY and alleged
   successor-in-interest to DIAL CORPORATION
7

8

9                    UNITED STATES DISTRICT COURT
10
             FOR THE NORTHERN DISTRICT OF CALIFORNIA
11
                      SAN FRANCISCO DIVISION
12

13
   JERI REDMAN, individually and as      )  Case No. 08-CV-03013-JSW
14 successor-in-interest to RONALD REDMAN, )
   deceased; and JERI REDMAN, AMY        )
15 REDMAN, DAVID C. REDMAN, MARK         )  **OPPOSITION ON BEHALF OF VIAD**
16 REDMAN and PAUL REDMAN, as legal      )  **CORP TO PLAINTIFFS' MOTION FOR**
   heirs of RONALD REDMAN, deceased,     )  **REMAND**
17                                        )
18              Plaintiffs,               )
                                          )  **Date: September 5, 2008**
19      v.                                )  **Time: 9:00 a.m.**
                                          )  **Courtroom: 2, 17th Floor**
20 A.W. CHESTERTON COMPANY et. al.       )
                                          )
21              Defendants.              )  **Hon. Jeffrey S. White**
                                          )
22 _____   )

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL BACKGROUND ............................................................................... 2

III.    LEGAL ANALYSIS............................................................................................. 6

        A.      REMOVAL SHOULD BE SUSTAINED BECAUSE PLAINTIFFS
                HAVE ESTABLISHED NONE OF THE OPERATIVE FACTS
                THAT THEY CLAIM REQUIRE REMAND.......................................... 6

        B.      REMAND SHOULD BE DENIED BECAUSE VIAD CAN ESTABLISH ALL
                THE ELEMENTS NEEDED FOR FEDERAL OFFICER REMOVAL.......... 10

        1.      Viad Satisfies the Bases and Standards for Federal Officer Removal.................. 10

        2.      Viad and Its Alleged Predecessor Qualify as "Persons"....................................... 11

        3.      Viad Has a Colorable Federal Defense................................................................. 11

                a.      The Government Approved Reasonably Precise Specifications............ 12

                b.      Griscom-Russell's Products Conformed to Government Specifications... 12

                c.      Griscom-Russell Did Not Fail to Warn the Navy of Any Dangers From
                        Asbestos of Which the Navy Was Unaware.................................... 12

        4.      Viad's Alleged Predecessor Acted Under a Federal Officer or Agency................ 13

        5.      Viad Can Show the Required Causal Nexus.......................................................... 13

i

C.    THE FEDERAL OFFICER DEFENSE APPLIES TO VIAD'S FAILURE TO WARN CLAIMS……………………………………………………………………13

D.    PLAINTIFFS' "DISCLAIMER" DOES NOT DEFEAT REMOVAL AS SUBJECT MATTER JURISDICTION IS GROUNDED IN THE EXISTENCE OF A FEDERAL DEFENSE…………………………23

E.    POSSIBLE TRANSFER OF THIS CASE TO THE MDL PRESENTS NO GROUND FOR REMAND……………………………25

IV.    PLAINTIFFS' REQUEST FOR ATTORNEYS' FEES/COSTS
SHOULD BE DENIED……………………………………………………………26

V.    CONCLUSION…………………………………………………………………………27

# TABLE OF AUTHORITIES

<u>Cases</u>                                                                                        <u>Pages</u>

*Amchem Prods., Inc. v. Windsor*
        521 U.S. 591, 598 (1997).…………………………………....……............24

*Arizona v. Manypenny*
        451 U.S. 232,242, 101 S. Ct. 1657, 1664 (1981).………………………………….16

*Asbestos Products Liability Litigation (No. VI)*
        771 F. Supp. 415, 418 (Jud.Pan.Mult.Lit., 1991)..……………………………….24

*Ballenger v. Agco Corporation*
        2007 WL 1813821, at 2 (N.D. Cal. 2007)……………………………….11,12,13,16

*Boyle v. United Technologies Corp.*
        487 U.S. 500, 512 (1988).………………………………….…..……….10,12

*Butler v. Ingalls Shipbuilding, Inc.*
        89 F.3d 582, 586 (9th Cir. 1996)………………………………………….13

*Contois v. Able Industries Inc.*
        523 F. Supp. 2d 155 at 164, n.1 (D. Conn 2007.) ………………………………….25

*Durham v. Lockheed Martin Corporation*
        445 F.3d 1247, 1251 (9th Cir. 2006) …………………………………….10,11,26

*Emory v. McDonnell Douglas Corp.*
        148 F.3d 347, 350 (4th Cir. 1998).………………………………………….13

*Ferguson v. Lorillard Tobacco Company, Inc.*
        475 F.Supp.2d 725, 729 (N.D. Ohio 2007) ………………………………………….18

*Fung v. Abex Corp.*
        816 F.Supp. 569, 572 (N.D.Cal. 1992) …………………………………………….11

*Grispo v. Eagle-Picher Indus., Inc.*
        897 F.2d 626, 629 (2d Cir. 1990). …………………………………………….11

*Harris v. Rapid American Corp.*

    532 F.Supp.2d 1001 (N.D. Ill. 2007). ……………………………………………18,21

*In re Hawaii Federal Asbestos Cases*

    960 F.2d 806, 812 (9th Cir. 1992)……………………………………………14

*In re New York City Asbestos Litig.,*

    144 Misc. 2d 42, 46, 542 N.Y.S.2d 118, 121 (N.Y. Sup. Ct. 1989)…………………14

*Jefferson County v. Acker*

    527 U.S. 423,431, 119 S. Ct. 2069 (1999) ………………………………………17

*In re: Maine Asbestos Cases*

    44 F. Supp.2d 368, 374 n.2 (D.Me. 1999) ………………………………………25

*Machnik v. Buffalo Pumps Inc., et al.*

    506 F.Supp.2d 99, 103 n.1 (D.Conn. 2007) …………………………………10,11,14

*Marley v. Elliot Turbomachinery Co., Inc.*

    --- F.Supp.2d ---, 2008 WL 1700326 at p. 6 ………………………………………18

*Martin v. Franklin Capital Corp.,*

    546 U.S. 132 (2005)……………………………………………………26

*Mesa v. California*

    489 U.S. 121,128(1989) ………………………………………………8

*Nesbiet v. General Elec. Co.*

    399 F.Supp.2d 205,210-11 (S.D.N.Y. 2005) …………………………………...16

*Nielsen v. George Diamond Vogel Paint Co.,*

    892 F.2d 1450, 1455 (9th Cir. 1990)………………………………………13

*O'Connell v. Foster Wheeler Energy Corp.*

    --- F. Supp. 2d ---, 2008 WL 1722079, n. 12 ……………………………………20,23

*Oliver v. Oshkosh Truck Corp.*

    96 F.3d 992 at 1004, n.8 (1999) ………………………………………………20

*Oberstar v. CBS Corp.*

    No. CV08-118 PA, 2008 U.S. Dist. LEXIS 14023(C.D. Cal. Feb. 11, 2008) ……........21

*Reaser v. Allis Chalmers Corporation Product Liability Trust et. al.*

2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008)...............................................11

*Snell v. Bell Helicopter Textron, Inc.*
107 F.3d 744, 749-50 (9th Cir. 1997).................................................................13

*Westbrook v. Asbestos Defendants*
2001 WL 902642 (N.D.Cal. 2001) ...................................................................23

*Willingham v. Morgan*
395 U.S. 402, 407, 89 S. Ct. 1813, 1816 (1969) ..............................................19

*Wright v. A.W. Chesterton Company, Inc.*
No. C07-05403, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008) ...........................20


Statutes

28 U.S.C. § 1442(a)(1) ....................................................................................1


Other Authorities

*Selective Training and Service Act of 1940*
Pub. L. No. 783, § 9, 54 Stat. 885, 892-93 (1940) ...........................................15

*In re Asbestos Prods. Liab. Litig.* (No. VI)
771 F. Supp. 415, 418 (J.P.M.L. 1991)............................................................25

# I.

## INTRODUCTION

Plaintiffs claim that Ronald Redman was exposed to asbestos-containing materials while repairing military vessels at U.S. Navy shipyards from 1964 to 1984. They allege that Mr. Redman died from an asbestos-related disease.

Pursuant to comprehensive design, manufacture and insulation specifications issued by the U.S. Navy, Griscom-Russell Company made shipboard distillers for Navy vessels built in the 1940's and 1950's. The distillers converted seawater into fresh water for propulsion. Plaintiffs contend that the distillers were insulated with asbestos-containing materials, and that Mr. Redman was exposed to asbestos associated with the distillers while working aboard specific ships from 1974 to 1984.

Plaintiffs allege that defendant Viad Corp ("Viad") is the corporate successor to a company named Baldwin-Lima-Hamilton ("BLH"), and that BLH was a successor in some manner to Griscom-Russell. Griscom-Russell dissolved as a corporation in 1963 and BLH dissolved as a corporation in the early 1970's.

However, because Griscom-Russell manufactured its shipboard distillers pursuant to the strict military specifications of the Naval Architect, and acted as a federal agent in doing so, Viad removed this matter pursuant to 28 U.S.C. § 1442(a)(1) from the San Francisco Superior Court to the Northern District of California. The exercise of jurisdiction by this Court neither deprives the plaintiff relief for the injuries claimed, nor deprives plaintiffs of any substantive rights.

Viad need not prove its entire case at this early stage. Instead, Viad must only demonstrate a colorable claim or defense. Plaintiffs' remand motion fails to rebut the simple fact that Viad asserts a colorable federal defense in this matter, which vests this Court with original jurisdiction.

Without identifying the type of distiller installed on the vessels upon which decedent worked, Plaintiffs try to defeat federal jurisdiction through the speculative proposition that Griscom-Russell distillers were also sold for non-military use. The Plaintiffs' evidence: advertisements from BLH dated after Griscom-Russell became defunct, and their attorney's affidavit contending that a Griscom-Russell distiller manual was written for a non-military user.

Plaintiffs' motion and the supporting declarations are fatally flawed. Plaintiffs provide no evidence of non-military sales of the distillers, and many of the ships that Plaintiffs claim the decedent worked upon were either scuttled or sold to other governments by the time he supposedly worked on them.

Viad establishes below that a colorable federal defense exists for Griscom-Russell in this matter, that Viad is entitled to assert that defense only in federal court, and that Plaintiffs have mischaracterized the supposed evidence of commercial sales of distillers by Griscom-Russell.

For these and the other reasons set forth below, this Court should deny plaintiffs' motion.

## II.

## FACTUAL BACKGROUND

During the 1940s and 1950s, the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation, and warnings associated with its ships and did not permit deviation by any of its contractors. (*Declaration of Admiral Ben J. Lehman*, at ¶¶ 5-9.) The Navy specified the use and placement of insulation, including asbestos insulation, on Navy ships. On-board evaporators/distillers were delivered without insulation to allow the equipment to be connected to other equipment. Shipyard workers would insulate evaporators/distillers after installation pursuant to Navy plans and specifications. (*Id.* at ¶ 10.) The U.S. Navy was aware of the dangers of asbestos by the 1940s. Despite such knowledge, the Navy did not provide any warnings. (*Id.*)

Equipment suppliers were prohibited from providing any warnings to be placed on or to accompany equipment supplied to the Navy without the consent and approval of the Navy. (*Id.* at ¶ 11.; *Declaration of Dr. Charles Cushing*, at ¶ 11.) Asbestos warnings would not have been approved by the Navy. All equipment and procedures had to be standardized to assure that personnel were familiar with the procedures for operating, repairing and maintaining the equipment. Thus, a contractor or supplier could not provide warnings or recommendations without the consent and authorization of the Navy. (Lehman declaration at ¶¶ 11,13.)

During the 1940s and early 1950s, the Navy did not have the tools, equipment, and/or personnel capabilities to comply with warnings pertaining to asbestos aboard ship, especially under the exigencies of war. Because the Navy limited the areas of interest of each manufacturer

2

to the equipment it supplied, it would have been improper for a supplier to provide warnings regarding insulation. (Lehman declaration at ¶¶ 12-13.) Inasmuch as the equipment supplier was not responsible for insulation, it likely was not aware of insulation hazards. If a supplier placed a warning on the equipment, it could have no reason to believe it would not be covered or obscured by insulation or another's equipment. ( *Id.* at ¶¶ 11-12.) The Navy was the entity that specified the insulation, and designated the type and placement of the insulation. Therefore, the Navy's knowledge of risks of the insulation was equal to or superior to that of the suppliers that provided the uninsulated equipment, such as a shipboard distiller. (*Id.*)

Plaintiffs allege that the decedent was exposed to asbestos while working at the Norfolk Naval Shipyard from 1974 through 1984 aboard the *USS John King*, the *USS DuPont*, the *USS Ingraham*, the *USS Kearny*, and the *USS Reuben James*. Plaintiffs contend that the vessels upon which he worked were equipped with distilling plants manufactured by the Griscom-Russell Company ("GR"), and that the decedent was exposed to asbestos-containing materials they claim were associated with the distilling plants.

Griscom-Russell Company manufactured distilling plants that were installed on some U.S. Navy vessels during the 1940s and 1950s. Griscom-Russell manufacturing operations ceased in 1962, and the company was dissolved in 1963. (*Declaration of Dr. Charles Cushing*, at ¶ 4.)

The *USS Ingraham* (DD-694) was a destroyer built in 1943 and commissioned on March 10, 1944. On July 16, 1971, she was sold to Greece, therefore, that vessel was not available for the decedent to work upon from 1974 to 1984. (*Declaration of Dr. Charles Cushing*, at ¶ 6.)

The *USS Kearny* (DD-432), was a destroyer built in 1939, and commissioned on September 13, 1940. She was sold on October 6, 1972, and broken up for scrap, therefore, that vessel was not available for the decedent to work upon from 1974 to 1984. (*Declaration of Dr. Charles Cushing*, at ¶ 7.)

The *USS Reuben James* (DE-153) was a destroyer escort built in 1942, and commissioned on April 1, 1943. She was used as an explosives test ship from 1968 to 1971, and sunk as a target on March 1, 1971, therefore, that vessel was not available for the decedent to work upon from

1974 to 1984. (*Declaration of Dr. Charles Cushing*, at ¶ 8.)

The *USS John King* (DD-953/DDG-3) was a destroyer built in 1958, and commissioned on February 4, 1961. If that vessel was equipped with a Griscom-Russell distiller, it was most likely installed by naval shipyard workers in 1959, then insulated thereafter. (*Declaration of Dr. Charles Cushing*, at ¶ 9.)

The *USS DuPont* (DD-941) was a destroyer built in 1955, and commissioned on July 1, 1957. If that vessel was equipped with a Griscom-Russell distiller, it was most likely installed by naval shipyard workers in 1956, then insulated thereafter. (*Declaration of Dr. Charles Cushing*, at ¶ 10.)

Griscom-Russell distillers made in the 1940's and 1950's were designed, built and installed on U.S. Naval vessels only in accordance with precise and exacting specifications of the U.S. Navy's Naval Architect. (*Declaration of Dr. Charles Cushing*, at ¶ 11.)

The U.S. Navy participated intimately in the preparation of any instructional manuals for machinery aboard ships. GR would have been required to follow any specifications for such informational manuals and would have had no discretion to deviate from such specifications by providing warnings. (*Declaration of Dr. Charles Cushing*, at ¶ 12.)

Even if GR attempted to affix any warnings to the distillers it made for the Navy, such warnings would not have been visible to the distiller operators or repair personnel. GR delivered the distillers to the Naval Shipyards without any insulation so that the distillers could be tested prior to installation. The distillers and other engine room equipment would be insulated only after final installation and inter-connection in the ship's engine rooms. The U.S. Navy specified, designed and approved very precise specifications governing how the shipyard should insulate the equipment and the type of materials the shipyard should use to insulate the equipment. (*Declaration of Dr. Charles Cushing*, at ¶ 13.)

Plaintiffs submitted a 1945 manual as evidence that the Griscom-Russell distillers that may have been installed on the *John King* an the *DuPont* were also manufactured and sold commercially to private industry. That manual, entitled "Instructions for Operation, Care and

Maintenance of Griscom-Russell Navy Type Low Pressure Distilling Plant," is not a manual that was written for use by any organization other than the U.S. Navy. (*Declaration of Dr. Charles Cushing*, at ¶ 14.)  The cover of that manual bears a stamp that reads" U.S.N.R.T.C Fort McHenry, Baltimore Maryland," which means that the manual was sent to, and used by, the U.S. Naval Reserve Training Center, which existed at Fort McHenry near Baltimore, Maryland. (*Id.*)

In addition, the internal text of the 1945 manual was obviously not composed for non-Navy customers.  The exhibit bears the identifying number "1175" on the attached post card and the first page, states that it is "loaned" to the recipient and remains Griscom-Russell's property, and notes that it is "to be considered as restricted information."  Such a statement and protocol is certainly more typical of U.S. Navy procedures than that seen in commercial distribution. Further, the manual states on page 1 that it is "intended to supplement" previous "Confidential Instructions," which comports more with war-time Navy protocol than any confidentiality concern in private industry for a mere water distiller.  The manual also refers at page 28 to Navy Department "Spec. 33P25."  Lastly, at page 33, the manual anticipates that repairs may be made "at a Navy yard or base." (*Declaration of Dr. Charles Cushing*, at ¶ 15.)

In about 1970, an attorney named Peter Novak became general counsel of a company known as Baldwin-Lima-Hamilton, a Delaware corporation ("BLH").  He took inventory of BLH product lines at that time to determine if some could be sold.  He discovered that BLH, among other products, had manufactured and sold enormous (acre size), land-based desalination plants to foreign countries.  Mr. Novak discovered a reference in the BLH records to the name "Griscom-Russell," but through investigation confirmed that BLH never made or sold products under that name, or manufactured shipboard evaporators for the Navy. Further, Mr. Novak testified that BLH was dissolved in the 1970's. (Trial Transcript of Peter J. Novak at 12:5-15; 12:23-13:19; 32:1-16; Exhibit 1 to Declaration of Whitney A. Davis; Deposition Transcript of Henry Rentschler, Volume II, *Payne vs. Saberhagen Holdings et. al. Washington State*, King County Civil Action No. 05-2-35924-2 SEA at 55:24-56:19, 57:18-21; 61:15-22; 75:2-76:3 Exhibit 2 to Declaration of Whitney A. Davis.)

Former BLH employee Henry Rentschler, who worked on the shop floor as a manager at the BLH plant in Eddystone, Pennsylvania, testified that BLH never made shipboard or Naval distillers. (Deposition Transcript of Henry Rentschler, Volume II, *Payne vs. Saberhagen Holdings et. al. Washington State*, King County Civil Action No. 05-2-35924-2 SEA at 55:24-56:19, 57:18-21; 61:15-22; 75:2-76:3, Exhibit 2 to Declaration of Whitney A. Davis.) Per Mr. Novak BLH-DE was dissolved in or around 1975. (Deposition testimony of Peter J. Novak taken in the case of *Andregg v. A.W. Chesterton Company*, San Francisco Case No. 274208, at 32:13-18; 33:7-11; 33:19-34:3; 37:23-38:1 38:2-16, Exhibit 3 to the Declaration of Whitney A. Davis.)

According to Mr. Rentschler, even though BLH placed ads regarding continuing the Griscom-Russell evaporator product line, that effort never resulted in the actual manufacture or sale of a Griscom-Russell evaporator by BLH. (Exhibit 2, 75:2-76:3.)

## III.

## LEGAL ANALYSIS

### A.  PLAINTIFFS HAVE NOT PROVEN THE FACTS THEY CLAIM REQUIRE REMAND

Plaintiffs' motion is riddled with errors and irrelevancies that warrant its denial. To begin with, plaintiffs' Interrogatory Responses, annexed to their motion as Exhibit D, assert that the decedent was exposed to asbestos from Griscom-Russell distilling plants on five U.S. Navy vessels while he was working at the Norfolk Naval Shipyard between January 1974 and December 1984. Any possible doubt that these are plaintiffs' only claims against Viad, as Griscom-Russell's alleged successor-in-interest, was removed by plaintiffs' counsel's June 16, 2008 letter to Viad's counsel, annexed to plaintiffs' motion as Exhibit L, stating that the decedent "was exposed to asbestos from Griscom-Russell distilling plants aboard the *USS John King*, . . . the *USS DuPont* . . ., the *USS Ingraham* . . ., the *USS Kearney*[1] . . ., and the *USS Reuben James*."

The proven inaccuracy of plaintiffs' assertions regarding the *USS Ingraham*, the *USS Kearny*, and the *USS Reuben James* casts strong doubt on the remainder of plaintiffs' claims.

---

[1] As plaintiffs' Interrogatory Responses reflect, "Kearney" is a typographical error, as the name of the ship is actually "Kearny."

OPPOSITION BY VIAD CORP TO PLAINTIFFS' MOTION FOR REMAND
CASE NO.  08-CV-03013-JSW

1    Plaintiff simply could not have worked on the *USS Ingraham* (DD-694), the *USS Kearny* (DD-

2    432), or the *USS Reuben James* (DE-153) from 1974 to 1984. (See accompanying Declaration of

3    Charles R. Cushing, Ph.D., P.E., president of C.R. Cushing & Co. Inc., Naval Architects, Marine

4    Engineers and Transportation Consultants, who reaches these conclusions based on his

5    experience, training, and involvement in the design, construction and conversion of more than

6    250 ocean going vessels and research on the vessels at issue, ¶¶ 1-7)

7        Rather, the only vessels that Plaintiffs identify which could possibly be equipped with

8    Griscom-Russell distillers to which the decedent might arguably have been exposed are the *USS*

9    *DuPont* (DD-941) and the *USS John King* (DD-953/DDG-3). (See Declaration of Charles R.

10   Cushing, Ph.D., P.E., ¶¶ 8-9.) These were, of course, a new generation of U.S. Navy vessels

11   from those that had been built and used in World War II.

12       Plaintiffs fail to remove the doubt that these late 1950s U.S. Navy vessels were equipped

13   with distillers placed on World War II Navy vessels. While Plaintiffs' Interrogatory Responses

14   allege that "[p]er Navy archives docs, the USS JOHN KING (DDG-3) operated GRISCOLM-

15   RUSSELL [sic] distilling plants" and make the same allegations for the *USS DuPont*, plaintiffs

16   produced no Navy archive document proving this allegation in their motion for remand. If the

17   distilling plants on the *USS John King* and *USS DuPont* were of the same model as those from the

18   World War II vessels referred to in Plaintiffs' Exhibits G and H, the Court should expect the

19   Plaintiffs to prove that fact on motion for remand.

20       Remarkably, Plaintiffs use literature from 1941, 1942 and 1945 as evidence in a matter

21   where the only vessels available for decedent to work upon were commissioned more than a

22   decade later. Plaintiffs' Exhibit N, the 1941 edition of the "Naval Machinery" handbook which

23   includes references to Griscom-Russell, has no possible relevance to this case except to confirm

24   that in 1941 Griscom-Russell supplied distilling plants for some Navy vessels. Likewise,

25   Plaintiffs' Exhibit G, a 1942 manual entitled Griscom-Russell's "Description of Operating

26   Instructions for Soloshell L.P. Distilling Plant," has no possible relevance except for the same

27   limited purpose. Moreover, Exhibit G is also irrelevant because it concerns "DD666 destroyers,"

28   none of which is among the vessels identified in this case. Plaintiffs simply provide no evidence

1  that a Griscom-Russell Soloshell Low Pressure Distilling Plant was installed on the *USS John*
2  *King* or the *USS DuPont*.

3      Plaintiffs assert in the Rosenthal Declaration in support of the motion for remand that
4  Exhibit H, a 1945 manual entitled "Instructions for Operation, Care and Maintenance of Griscom-
5  Russell Navy Type Low Pressure Distilling Plants," was "published by The Griscom Russell
6  Company for use with its commercially available distilling plants." But, beyond this bald
7  allegation, plaintiffs have submitted no evidence at all that this manual in fact concerned
8  "commercial distilling plants," and all indications in the text of the document are to the contrary.

9      For example, plaintiff's Exhibit H bears the identifying number 1175 on the attached post
10 card and the first page, states that it is "loaned" to the recipient and remains Griscom-Russell's
11 property, and notes that it is "to be considered as restricted information" – certainly more typical
12 of U.S. Navy than of commercial distribution. (Declaration of Charles Cushing, at ¶ 15.)

13     Indeed, it is Dr. Cushing's opinion that the 1945 manual, entitled "Instructions for
14 Operation, Care and Maintenance of Griscom-Russell Navy Type Low Pressure Distilling Plant,"
15 is not a manual that was written for use by any organization other than the U.S. Navy for several
16 reasons: The cover of the 1945 manual bears a stamp that reads" U.S. N.R.T.C Fort McHenry,
17 Baltimore Maryland." Per Dr. Cushing's opinion, that stamp means that the copy of the 1945
18 manual was sent to, and used by, the U.S. Naval Reserve Training Center, which he knows to
19 have existed at Fort McHenry near Baltimore, Maryland.   Additionally, Dr. Cushing found the
20 copy of the manual submitted by the plaintiffs was copied too dark to read the stamp, so he
21 attached to his declaration as Exhibit 3 a copy of the same document scanned in lighter tones. He
22 received that copy of the same 1945 manual in another matter.

23     The 1945 manual states on page 1 that it is "intended to supplement" previous
24 "Confidential Instructions." Moreover, the manual refers at page 28 to Navy Department "Spec.
25 33P25." Finally, at page 33 the manual anticipates that repairs may be made "at a Navy yard or
26 base." (Declaration of Dr. Cushing at ¶¶14-15.)

27     All of these references belie plaintiffs' unsupported assertion that Exhibit H applies to
28 distillers that were commercially available – surely a most unlikely proposition during World War

II. Thus, Exhibit H from 1945 has no relevancy, other than to undermine Plaintiffs' veracity and relegate their contentions of commercial availability to baseless speculation.

The *USS DuPont* and the *USS John King* were built in the second half of the 1950s at Bath, Maine. Accordingly, Exhibit I to plaintiffs' motion, the U.S. Navy Military Specification Manual, Service (Instruction Books) for Shipboard Electrical and Mechanical Equipment, which became effective on June 6, 1961 and expressly superseded the previous September 10, 1957 specifications, can have no possible relevancy to this matter.

Plaintiffs apparently intended Exhibits E, F, and M to their Motion to support their theory that Griscom-Russell manufactured shipboard distilling plants for commercial, as well as military, use. But these documents show no such thing for the relevant period at issue – the second half of the 1950s, which is when the Griscom-Russell distilling plants allegedly on the *USS DuPont* and the *USS John King* would have been manufactured and installed.

Exhibit E, a copy of the 1961 Baldwin-Lima-Hamilton ("BLH") annual report, reflects on page 1 that Griscom-Russell was a part of Hamilton-Thomas Corporation until January 1962, a company that BLH did not "control" before that time. Exhibits E, F and M at most indicate that in 1962, BLH had considered marketing Griscom-Russell shipboard distilling plants[2] after BLH acquired Hamilton-Thomas' stock. However, nothing in these materials demonstrates that Griscom-Russell manufactured or sold shipboard distilling plants to commercial users when the *USS DuPont* and *USS John King* were built in the 1950's, which was several years before BLH purchased Hamilton-Thomas stock.

BLH literature from the early 1960's is not evidence that Griscom-Russell sold an as-yet-unidentified shipboard distiller model commercially the decade before. This concept is especially true considering that the Plaintiffs' "evidence" fails to show the actual commercial sale of a shipboard distiller by BLH, and fails to show that the distiller model placed on the two 1950's Navy vessels has anything in common with any BLH product that was actually sold.

---

[2] Although neither alleged corporate successorship nor whether BLH sold former Griscom-Russell products is at issue on this remand motion, Viad attaches as Exhibits 1 and 2 to the Declaration of Whitney A. Davis relevant pages from the prior testimony of former Viad general counsel Peter J. Novak and former BLH employee Henry Rentschler (Exh. 1 and 2) indicating both that BLH and Viad are not Griscom-Russell's successors-in-interest and that BLH did not in fact manufacture or sell former Griscom-Russell shipboard distilling plants.

1    Further, even if plaintiffs proved that BLH sold a Griscom-Russell distiller model

2    commercially in the 1960's, such a fact does not prove that Griscom-Russell sold the same

3    distiller commercially when the *USS DuPont* and the *USS John King* were built the decade

4    before, or that the same distiller was placed on those ships. Accordingly, plaintiffs' Exhibits E, F,

5    and M prove nothing of relevance to this case.

6

7    **B.  REMAND SHOULD BE DENIED BECAUSE VIAD CAN ESTABLISH**
     **ALL THE ELEMENTS NEEDED FOR FEDERAL OFFICER REMOVAL**
8

9    **1.  Viad Satisfies the Bases and Standards for Federal Officer Removal**

10   Viad removed this case to this Court pursuant to the federal officer removal statute, 28

11   U.S.C. § 1442(a)(1), which permits removal of the matter from state to federal court if the

12   defendant is the United States or any agency thereof or any officer (or any person acting under

13   that officer) of the United States or any agency thereof, sued in an official or individual capacity

14   for any act under color of such office.  (See, e.g., *Ballenger v. Agco Corp.,* 2007 WL 1813821, at

15   2 (N.D. Cal. June 22, 2007); *Durham v. Lockheed Martin Corp.,* 445 F.3d 1247, 1251 (9th Cir.

16   2006); *Ferguson v. Lorillard Tobacco Co., Inc.,* 475 F. Supp. 2d 725, 729 (N.D. Ohio 2007).

17   This rule applies to the "[r]emoval of cases against government contractors," such as Viad's

18   alleged predecessor-in-interest Griscom-Russell, that acted under a federal officer.  (*Machnik v.*

19   *Buffalo Pumps Inc.,* 506 F. Supp. 99, 102 (D. Conn. 2007), citing *Mesa v. California,* 489 U.S.

20   121, 131 (1989).)

21   To justify federal officer removal jurisdiction, Viad must show that (1) it is a "person"

22   within the meaning of the statute, (2) it has a colorable federal defense, (3) its alleged predecessor

23   Griscom-Russell acted under the direction of a federal agency or officer, and (4) there is a causal

24   nexus between the claims asserted by plaintiffs and Griscom-Russell's conduct performed under

25   the color of a federal officer.  (*Durham,* 445  F.3d at 1251.)

26   Contrary to plaintiffs' claim (brief, p. 7) that Viad has an extra burden, and unlike removal

27   under 28 U.S.C. § 1441, both Congress and the U.S. Supreme Court have mandated that this

28   Court interpret § 1442(a)(1) broadly in favor of removal.  (*Durham,* 445 F.3d at 1252-53;

1  Ballenger, at 2.)  As stated in *Durham*, "removal is absolute for conduct performed under color of

2  federal office. . . ." ( *Id.* at 1252.)

3       Moreover, as the Central District of California recently ruled in *Reaser v. Allis Chalmers*

4  *Corporation Product Liability*  2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008) (a copy of this

5  opinion is attached as Exhibit 4 to the declaration of Whitney A. Davis) "as the purpose of § 1442

6  is to secure that the validity of the defense will be tried in federal court," "Defendants need not

7  establish the validity of their federal defense in order to justify removal.  Rather, they must only

8  raise a colorable defense," *Id.*, slip op. at 8, and they "must simply show the existence of a likely

9  causal connection, not prove such a connection." (*Id.* at 11.)  The court then held that the

10  declarations of Retired Admiral Ben J. Lehman and Dr. Charles R. Cushing – substantially

11  similar to those supplied herein – "provide Defendants with a basis for asserting a colorable

12  federal defense, which is all that is needed at the removal stage."  (*Id.* at 9.)

### 2. Viad and Its Alleged Predecessor Qualify as "Persons"

14       It is undisputed that, as corporations, both Viad and its alleged predecessor Griscom-

15  Russell meet the preliminary requirement that the removing party be a person within the meaning

16  of the statute.  (*Fung v. Abex Corp.*, 816 F. Supp. 569, 572 (N.D. Cal. 1992).)

### 3.  Viad Has a Colorable Federal Defense

18       As the alleged successor-in-interest to Griscom-Russell, Viad has a federal defense to

19  plaintiffs' lawsuit, viz., federal officer immunity from liability for injuries arising from any

20  exposure to asbestos from equipment Griscom-Russell manufactured pursuant to contracts with

21  the U.S. Navy. (See *Boyle v. United Tech. Corp.,* 487 U.S. 500, 512 (1988).)  The elements of this

22  defense include: (1) the United States approved reasonably precise specifications, (2) the

23  equipment supplied by Griscom-Russell conformed to those specifications, and (3) the supplier

24  warned the United States about the dangers in the use of the equipment that were known to the

25  supplier but not to the United States.  (*Id.* at 512.)  In a failure to warn case, Viad must also show

26  that whatever warnings accompanied a product resulted from a determination by a government

27  official such that the government itself dictated the content of the warning meant to accompany

28  the product.  (*Grispo v. Eagle-Picher Indus., Inc.,* 897 F.2d 626, 629 (2d Cir. 1990).)  As stated,

at this preliminary stage of the litigation, Viad need not prove that its defense will ultimately be

1    meritorious; rather, it need only show that it is "colorable" in order to justify removal.

2    (*Ballenger*, at 4.)

### a.  The Government Approved Reasonably Precise Specifications

4    To demonstrate reasonably precise specifications, Viad must show that the Navy actively

5    participated in creating the specifications for the products and warning labels Griscom-Russell

6    allegedly supplied, and that the government imposed those specifications on Griscom-Russell.

7    (*Machnik*, 506 F. Supp. 2d at 103.)  Viad clearly satisfies this burden through the Declarations of

8    Admiral Lehman and Dr. Cushing, both of whom state under penalty of perjury that the U.S.

9    Navy exercised complete control over every aspect of all equipment supplied by contractors,

10   including warnings, and that any materials or equipment supplied that was inconsistent with Navy

11   specifications would have been rejected. (see accompanying Lehman and Cushing declarations.)

### b.  Griscom-Russell's Products Conformed to Government Specifications

13   Viad must also show that the products Griscom-Russell supplied to the United States

14   conformed to Navy specifications, i.e., that the Navy received exactly what it sought.  The

15   Declarations of Admiral Lehman and Dr. Cushing sufficiently demonstrate that any materials

16   supplied by a contractor that were not entirely consistent with the Navy's extensive specifications

17   would have been rejected.  Thus, assuming arguendo that the decedent was exposed to asbestos

18   while working with or around Griscom-Russell's equipment, that equipment had to comply fully

19   with the Navy's detailed specifications concerning both design and warnings inasmuch as,

20   according to both Admiral Lehman and Dr. Cushing, the Navy dictated every aspect of the

21   design, manufacture, installation, overhaul, written documentation, and warnings associated with

22   its vessels and did not permit any deviation therefrom by any of its contractors.

### c.  Griscom-Russell Did Not Fail to Warn the Navy of Any Dangers From Asbestos of Which the Navy Was Unaware

25   With regard to the final prong of the federal officer defense, Viad must show that at the

26   time of the decedent's alleged exposure to asbestos, Griscom-Russell did not fail to warn the

27   Navy of any dangers associated with asbestos that were known to Griscom-Russell but not also to

28   the Navy. (*Boyle*, 487 U.S. at 512.)  The Declaration of Admiral Lehman sufficiently shows that

the Navy was fully aware of the health hazards associated with the use of asbestos and that the

1  Navy, rather than military contractors such as Griscom-Russell, was in the best position to know

2  of those health hazards at that time. (*Id.* at ¶¶10, 13.)

3  **4. Viad's Alleged Predecessor Acted Under a Federal Officer or Agency**

4  　　To meet the requirement that Griscom-Russell acted under a federal officer or agency,

5  Viad must show that the Navy controlled the warnings Griscom-Russell could provide for its

6  products and that this control prevented Griscom-Russell from fulfilling its alleged state law duty

7  to warn of the hazards related to exposure to asbestos. ( *Fung*, 816 F. Supp. at 572; *Ballenger*, at

8  3.)  As shown *supra*, Admiral Lehman's and Dr. Cushing's Declarations sufficiently show that

9  the Navy's specifications precluded Griscom-Russell from including warnings about asbestos

10  with the equipment it supplied.  Thus, Griscom-Russell could not provide warnings about

11  asbestos because it was acting under the direction of the U.S. Navy.

12  **5. Viad Can Show the Required Causal Nexus**

13  　　Finally, Viad must demonstrate a causal nexus between the claim plaintiffs assert and the

14  acts Griscom-Russell allegedly performed under color of federal office, *Ballenger*, at 4, i.e., that

15  the Navy controlled which warnings Griscom-Russell was allowed to provide. (*Machnik*, 506 F.

16  Supp. 2d at 104.)  As discussed *supra*, Admiral Lehman's and Dr. Cushing's Declarations

17  sufficiently show that contractors supplying equipment to the U.S. Navy were required to comply

18  fully with all of the detailed specifications set by the Navy, including warnings.  Thus the

19  inference is clear that Griscom-Russell could not include any warnings regarding asbestos on its

20  equipment.

21  **C.  THE FEDERAL OFFICER DEFENSE APPLIES TO VIAD'S FAILURE TO**
22  **　　WARN CLAIMS**

23  　　The Ninth Circuit recognizes that federal officer removal is applicable to failure to warn

24  cases. (See *Emory v. McDonnell Douglas Corp.*, 148 F.3d 347, 350 (4th Cir. 1998), citing inter

25  alia *Snell v. Bell Helicopter Textron, Inc.*, 107 F.3d 744, 749-50 (9th Cir. 1997), and *Butler v.*

26  *Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996), standing for the principle that

27  although the U.S. Supreme Court's *Boyle* decision "adopted the government contractor defense in

28

1  the design defect context, many circuits have since held that the defense should also apply to

2  failure to warn claims."

3         In the face of these cases, plaintiffs argue that Viad is not entitled to the benefit of federal

4  officer removal because its alleged predecessor Griscom-Russell sold its shipboard distilling

5  plants in the commercial market as well as to the United States Navy.  But this assertion must fail

6  because the exhibits attached to plaintiffs' motion in no way show that when the *USS John King*

7  and the *USS DuPont* were manufactured at the Bath Iron Works in the late 1950s – or, for that

8  matter, at any time in the 1940s or 1950s, before BLH allegedly took over Griscom-Russell's

9  product line in January 1962 – Griscom-Russell's shipboard distillers were in fact commercially

10  available. (see factual analysis above.)

11         Plaintiffs' argument is unavailing for other reasons as well.  In *Boyle v. United Tech.*

12  *Corp.*, 487 U.S. 500, 509 (1989), the Supreme Court hypothesized the case where "a federal

13  procurement officer orders, by model number, a quantity of stock helicopters that happen to be

14  equipped with escape hatches opening inward," and found it "impossible to say that the

15  Government has a significant interest in that particular feature" in such circumstances.  For

16  similar reasons, the Supreme Court found that if "the United States contracts for the purchase and

17  installation of an air conditioning-unit, specifying the cooling capacity but not the precise manner

18  of construction, a state law imposing upon the manufacturer of such units a duty of care to

19  include a certain safety feature would not be a duty identical to anything promised the

20  Government, but neither would it be contrary," and thus state law would not be preempted.  (*Id.*)

21  Grounded in this analysis, the court emphasized in *In re Hawaii Federal Asbestos Cases*, 960

22  F.2d 806, 812 (9th Cir. 1992), on which plaintiffs so heavily rely here (brief, pp. 10-11), that the

23  asbestos insulation that Fibreboard and Owens-Illinois sold to the Navy "was not manufactured

24  with the special needs of the military in mind.  To the contrary, the military constituted a

25  relatively insignificant purchaser of products that were primarily designed for applications by

26  private industry."  Indeed, as the court held in *In re New York City Asbestos Litig.*, 144 Misc. 2d

27  42, 46, 542 N.Y.S.2d 118, 121 (N.Y. Sup. Ct. 1989), "[s]ince asbestos was used as insulation

28  material for products other than military hardware, it is not by definition strictly military

equipment."  Similarly, in *Nielsen v. George Diamond Vogel Paint Co.*, 892 F.2d 1450, 1455 (9th

1    Cir. 1990), also cited by plaintiffs, the paint used to maintain the dam "was a product designed to

2    further civilian, rather than military, objectives."

3          But the case at bar does not resemble any of those described above.  Instead, it is the

4    actual circumstances present in *Boyle v. United Tech. Corp.* that govern the analysis: "the state-

5    imposed duty of care that is the asserted basis of the contractor's liability (specifically, the duty to

6    equip helicopters with the sort of escape-hatch mechanism petitioner claims was necessary) is

7    precisely contrary to the duty imposed by the Government contract (the duty to manufacture and

8    deliver helicopters with the sort of escape-hatch mechanism shown by the specifications).  (*Id.* at

9    509.)

10         As the Declarations of Admiral Lehman and Dr. Cushing show, here Griscom-Russell

11   manufactured and supplied marine distilling plants pursuant to precise U.S. Navy specifications.

12   Manufacturers such as Griscom-Russell were prohibited from providing any warnings to be

13   placed on or accompany their equipment for the Navy without the Navy's consent and approval,

14   and the Navy would not have approved the inclusion of asbestos warnings.  Moreover, when

15   delivered to the Navy, Griscom-Russell's distillers included no insulation, asbestos or otherwise.

16   Hence, the decedent, allegedly injured by exposure to Griscom-Russell's distillers while working

17   aboard Navy ships, cannot deprive Viad of its right to federal officer removal.

18         Viad has established a colorable military contractor defense to plaintiffs' failure to warn

19   claim. Although plaintiffs argue there is no evidence that the Navy prohibited asbestos safety

20   warnings, the Declarations of Admiral Lehman and Dr. Cushing are the "proof" of this claim as

21   they demonstrate that the Navy controlled the warnings for ship equipment.  As these experts

22   note, any warnings offered by Griscom-Russell would have been rejected.  Furthermore,

23   procurement laws in effect at the time required contractors to comply with government

24   specifications in every way.  (Declarations of Dr. Cushing and Admiral Lehman, generally.)

25         By law, contractors could not deviate at all.  Failure by contractors to supply goods as

26   directed could result in a government takeover and criminal prosecution. See Selective Training

27   and Service Act of 1940, Pub. L. No. 783, § 9, 54 Stat. 885, 892-93 (1940):

28              [A]ny . . . company . . . who shall refuse to manufacture the kind, quantity, or
                quality of arms or ammunition, or the parts thereof, or any necessary supplies or

equipment, as ordered by the Secretary of War or the Secretary of the Navy . . . then . . . the President . . . is hereby authorized to take immediate possession of any such plant or plants . . . to manufacture therein such product . . . and any . . . company . . . failing to comply with the provisions of this section shall be deemed guilty of a felony. . . .

On this evidence, Viad meets the test of showing both that the Navy approved reasonably precise specifications for any equipment that Griscom-Russell manufactured for the Navy, including warnings, and that any such equipment conformed to those specifications. The court in *Ferguson*, 475 F. Supp. 2d at 730, came to this very conclusion based on evidence similar to that presented here: "Viad claims, and its affidavits support, that any warnings on the product itself were dictated by the Navy. Therefore, no deviation from the warnings or lack thereof was permitted (making it difficult for the warnings to be anything the Navy did not already know)." (See also *Machnik*, 506 F. Supp. 2d at 104: "GE sufficiently established, for purposes of this motion, that the Navy's specifications precluded GE from including warnings with the equipment it supplied. In turn, this establishes that GE did not provide warnings about asbestos because it was acting under the direction of the Navy.")

In *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205 (S.D.N.Y. 2005), the court considered and rejected the same argument plaintiffs are making here – that defendant GE was not entitled to remove the case to federal court because there was no evidence the Navy prohibited it from warning about asbestos hazards. The court rejected that argument based on Admiral Lehman's affidavit attesting that the Navy's control over every aspect of equipment "included the decision of what warnings should or should not be included," and that the Navy "determined the nature of the hazards to be subject to any precautionary labeling and the content of such labeling" (*Id.* at 207-08.) Here, Admiral Lehman and Dr. Cushing have submitted the same evidence.

In *Ballenger*, 2007 WL 181821, the court relied on similar proof from Admiral Roger B. Horne to deny plaintiffs' remand motion in an asbestos personal injury case alleging exposure while repairing a Navy vessel on the premises of the removing defendant, Todd Shipyards. (*Id.* at 3-4.) The *Ballenger* court ruled that the defendant met all of the elements for federal officer

OPPOSITION BY VIAD CORP TO PLAINTIFFS' MOTION FOR REMAND
CASE NO. 08-CV-03013-JSW

removal based on the affidavit of Admiral Horne stating that "the Navy dictated every aspect of the design, manufacture, installation, overhaul, written documentation and warnings associated with its ships." (*Id.*) There, like Viad's declarations here, Admiral Horne stated that no private contractor could have placed a warning anywhere aboard an active duty Navy ship except by permission of the Navy. (*Id.*)

The court also rejected plaintiffs' argument that defendant could not show it acted under the direction of federal officers unless it produced actual contractual documentation of the work it performed on behalf of the U.S. Navy, concluding that Admiral Horne's affidavit was sufficient to support the removal. (*Id.*) The court did not require defendant to produce any additional evidence that the Navy prohibited the defendant from warning about asbestos, again finding the affidavit sufficed to show "direct and detailed control" by the Navy over the defendant. (*Id.*) Based on this same evidence, the court found defendant had established a colorable federal defense, noting "the officer need not win his case before he can have it removed." (*Id.* (quoting *Willingham v. Morgan*, 395 U.S. 402, 407-08 (1969)).)

Nor is Viad required to produce the contracts that the Navy entered into with its alleged predecessor-in-interest Griscom-Russell for it to obtain federal officer removal. The law does not require Viad to produce such contracts to be entitled to litigate the merits of its military contractor defense in federal court. Rather, Viad has an absolute right to litigate that defense in federal court where, as here, the evidence sufficiently shows it acted under a federal officer and supports a colorable federal defense. (See, e.g., *Durham*, 445 F.3d at 1252; *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981); *Willingham*, 395 U.S. at 407; *Jefferson County, Alabama v. Acker*, 527 U.S. 423, 431 (1999).)

Viad's evidence includes the Declarations of Admiral Lehman and Dr. Cushing. Admiral Lehman is a retired Rear Admiral of the U.S. Navy, serving on active duty in part as Ship Superintendent and Dry Docking Officer at the Brooklyn Navy Yard between 1942 and 1944, and as a Ship Superintendent at the San Francisco Naval Shipyard from 1950 to 1952, where he personally supervised and oversaw ship alterations and equipment overhauls, among other experience set out in detail in his declaration and attached curriculum vitae. (Declaration of Admiral Lehman at ¶ 1.) Through his experience, professional training, and education, Admiral

1    Lehman is familiar with the plans, designs, and specifications used in the construction and repair

2    of Navy ships. He also has personal knowledge regarding Navy equipment manuals and

3    regulations governing the warnings permitted by the Navy. (*Id.* at ¶¶ 1-2.) Admiral Lehman

4    states in his declaration that "equipment suppliers were prohibited from providing any warnings

5    to be placed on or to accompany equipment supplied to the Navy without the consent and

6    approval of the Navy." (*Id* at ¶ 11.) He explains that certain warnings, including potential

7    warnings and recommendations regarding asbestos, would not have been approved by the Navy

8    "due to the inability to effectively and comprehensively observe, implement, and comply with

9    such recommendations under the multitude of varying conditions likely to be encountered by

10   Navy ships at sea, and especially at war." (*Id* at ¶ 11.)

11       Courts in California, Connecticut, Florida, Illinois, New York, and Ohio have found

12   Admiral Lehman's sworn statements to be credible and admissible evidence that entitled the

13   removing defendants in those cases to litigate their military contractor defenses in federal court.

14   The latest such decision was recently issued in *Reaser v. Allis Chalmers Corporation Product*

15   *Liability Trust et. al.* 2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008) where the court found

16   that both Admiral Lehman's and Dr. Cushing's declarations were based on their "independent

17   knowledge and familiarity regarding Navy specifications" and held that the declarations

18   "provide[d] Defendants with a basis for asserting a colorable federal defense."( *Id.*)

19       Other such cases include *Oberstar v. CBS Corp.*, 2008 U.S. Dist. LEXIS 14023 (C.D. Cal.

20   Feb. 11, 2008) (finding Lehman declaration sufficient to establish first two prongs of federal

21   officer defense, *viz.*, that Navy approved reasonably precise specifications regarding asbestos

22   warnings and that Griscom-Russell's equipment conformed to those specifications); *Machnik*,

23   506 F. Supp. 2d 99 (finding defendant sufficiently established colorable defense based on

24   Lehman affidavit); *Marley v. Elliot Turbomachinery Co.*, 545 F. Supp. 2d 1266 (S.D. Fla. 2008)

25   (denying remand motion on ground that affidavits of Admiral Lehman and Admiral Horne were

26   sufficient to show colorable defense); *Harris v. Rapid Am. Corp.*, 532 F. Supp. 2d 1001 (N.D. Ill.

27   2007) (denying remand motion on ground that Lehman and Cushing affidavits were sufficient for

28   removal); *Nesbiet*, 399 F. Supp. 2d at 210-11 (finding Admiral Lehman's affidavit raised an

"inference that [defendant] did not provide a warning concerning the dangers of asbestos because

1  the Navy did not permit any such warning"); *Ferguson*, 475 F. Supp. 2d 725 (finding Admiral

2  Lehman's and Dr. Cushing's general backgrounds and experience sufficient to support their

3  affidavits and, on that basis, overruling remand motion.)

4        Viad has also submitted the Declaration of Dr. Charles R. Cushing, a naval architect and

5  marine engineer involved in the design, construction, and/or conversion of more than 250

6  ocean-going vessels. (Declaration at ¶ 1.) The recent *Reaser v. Allis Chalmers Corporation*

7  *Product Liability Trust et. al.* 2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008) decision in the

8  Central District of California found that Dr. Cushing's declaration was based on his "independent

9  knowledge and familiarity regarding Navy specifications" and held that the declaration

10   "provide[d] Defendants with a basis for asserting a colorable federal defense."( *Id.* slip op at 7-8,

11  n.2, 9.) Based on his knowledge, experience, and familiarity with the contracting practices and

12  requirements of the Navy in constructing vessels, Dr. Cushing concludes in his Declaration in the

13  instant case that any Griscom-Russell equipment on Navy vessels "was designed and built to

14  meet precise and exacting specifications of the U.S. Navy." (Cushing declaration at ¶ 10.)

15        According to those specifications, the equipment would have been manufactured without

16  any insulation and shipped to the shipyards without insulation.  The equipment would have been

17  totally insulated at the shipyard, or after installation on the vessels, by others using insulation

18  purchased from others. (*Id.* at ¶ 13.)  According to Navy specifications, Griscom-Russell would

19  not have been able to affix any warnings or cautionary statements on its products.  Whether

20  certain equipment used aboard U.S. Naval vessels should have warnings, and the content and

21  format of any such warnings, was determined solely by the U.S. Navy.  Griscom-Russell would

22  have had no discretion whatsoever to affix any warnings of its own to products it delivered for

23  installation on Navy ships. (Cushing declaration at ¶ 11.)  Dr. Cushing likewise concurs with

24  Admiral Lehman's opinion regarding information manuals: equipment manufacturers, such as

25  Griscom-Russell, had no discretion to deviate from the Navy's precise specifications for those

26  manuals. (*Id.* at ¶ 11.) Moreover, as shown *supra*, the Selective Training and Service Act of 1940

27  barred military contractors, such as Griscom-Russell, from deviating from military specifications

28  in any way, under penalty of possible felony conviction.

Viad's evidence in support of removal satisfies the standards established by the U.S. Supreme Court for federal officer removals. As that court recognized in *Willingham*, 395 U.S. at 407-08, "[o]ne of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court. The officer need not win his case before he can have it removed." If removal is allowed only where the removing party has "a clearly sustainable defense," "[t]he suit would be removed only to be dismissed." (*Id.*).

The issue as to whether Viad must produce contracts between Griscom-Russell and the Navy in order successfully to remove this case to federal court was squarely faced and rejected by the court in *Ballenger, supra*. In considering plaintiffs' motion to remand following Todd Shipyards' removal of the action to federal court, plaintiffs contended that the shipyard could not show it acted under the direction of federal officers because it had not produced any actual contractual documentation of the work it allegedly performed on behalf of the Navy. (*Id.* at 3.) In rejecting this argument, the court held:

> Defendant Todd Shipyards is not required to produce contracts from decades past in order to demonstrate that it worked under the direction of federal officers; to require such documentation would frustrate the purpose of section 1442(a)(1). See, Durham, 445 F.3d at 1252. Admiral Horne's declaration suffices.

(*Id.* See also *Reaser,* slip op at 9, citing *Ballenger* and adopting its reasoning.) Here, Griscom-Russell ceased doing business over 45 years ago, and Viad contests its alleged successorship to Griscom-Russell. In such circumstances, it would be wholly unreasonable to require Viad to produce documents from an unrelated, dissolved corporation's distant past in order to obtain federal officer removal.

The court in *Ballenger* ruled that defendants were acting under the direction of a federal officer and had a colorable federal defense under *Boyle* without requiring them to provide actual contractual documentation that the Navy "affirmatively prohibited any kind of warning." (*Id.* See also *O'Connell v. Foster Wheeler Energy Corp.*, 544 F. Supp. 2d 51, 58 n.12 (D. Mass. 2008) ("While citations to regulations or contractual provisions barring warnings would certainly be sufficient to state a colorable claim, the weight of the cases suggest that there is no strict requirement that the government 'prohibit' warnings altogether or 'dictate' the contents of the

1  actual warnings incorporated," citing *Oliver v. Oshkosh Truck Corp.*, 96 F.3d 992, 1004 n.8 (7th

2  Cir. 1996), *cert. denied*, 520 U.S. 1116 (1997)3; *Harris*, 532 F. Supp. 2d at 1004-05 (rejecting

3  argument that Viad had not shown Griscom-Russell acted under the direction of the Navy

4  because it did not produce any contract or directive sent by the Navy); *Ferguson*, 475 F. Supp. 2d

5  at 729 ("Given the sixty year lapse in time, Viad, contrary to plaintiff's contention, is not required

6  to produce documents identifying the exact Naval officer who gave orders to Griscom-Russell

7  during World War II.")

8      In *Oberstar*, 2008 U.S. Dist. LEXIS 14023 at 10, the court likewise rejected plaintiffs'

9  argument that Viad and the other defendants could not meet their burden to establish a colorable

10  federal defense because they lacked evidence the Navy prohibited them from placing warnings on

11  their products:

12      According to Plaintiffs, absent evidence of specific facts that defendants were
prevented from placing warnings on their products, defendants cannot meet their
13      burden to establish the availability of the military contractor defense. Contrary to
Plaintiffs' assertions, however, defendants' burden at this stage of the proceedings
14      is not so exacting. . . . Although the Lehman Declaration may not establish the
absence of a triable issue of fact with respect to the first two prongs of the *Boyle*
15      test, as modified by *Oliver*, for a failure to warn claim, defendants need not prove
16      so much at this preliminary stage of the proceedings. . . . Again, to establish the
propriety of their removal, defendants must only show a "colorable" federal
17      defense, not a winning one.

18

19      In finding defendants' evidence sufficient to support removal, the court in *Oberstar*

20  specifically recognized the personal experience of Admiral Lehman while serving in the Navy in

21  the 1940s and 1950s at the Brooklyn Navy Yard and the San Francisco Naval Shipyard. See also

22  *Reaser, supra*, slip op. at 7-8 n.2:

23

24  ──────────────

25  [3] In *O'Connell*, defendant Buffalo Pumps was able to find and submit "a 1959 example of the detailed editing
undertaken by the Navy of a draft manual submitted by a contractor for review and approval," as well as "an
26  additional example, in this case to a draft equipment manual Buffalo Pumps submitted to the Navy in 1966." (*Id.*,
544 F. Supp. 2d at 56 n.9. ) Admiral Lehman's Declaration herein attaches the documents referred to in *O'Connell*
27  and states, based on his personal experience, that these documents "are typical of the Navy's detailed attention to
and control over the content of submissions, and the type of correspondence that the Navy used to reject
28  submissions of, and to require corrections and resubmissions by, its various contractors." Admiral Lehman also
explains that it is his experience that "such preliminary drafts and responsive comments were more typically
discarded than retained, which may serve to explain why more such documents have not turned up."

Plaintiffs further argue that Admiral Lehman and Dr. Cushing lack personal knowledge and that their declarations lack foundation and are speculative. These arguments lack merit because Admiral Lehman and Dr. Cushing's declarations are based on years of experience and training in regard to the design and operation of U.S. Navy vessels. Both declarants state that they are personally familiar with the degree of supervision and control of the Navy over the actions of its contractors.

Again in *Wright v. A.W. Chesterton Co., Inc.*, 2008 WL 512728 (N.D. Cal. Feb. 25, 2008), another case where the plaintiff alleged he was injured by exposure to asbestos from equipment on Navy vessels, the court concluded that there was "sufficient evidence in the record to raise a colorable government contractor defense," based on evidence that included Admiral Lehman's declaration stating that the Navy would not permit the defendant to put any type of warning on equipment installed on a Navy vessel beyond warnings required by the Navy itself. Other courts across the United States have likewise denied remand motions in failure to warn cases where evidence similar to that produced here by Viad sufficiently showed that the Navy did prohibit asbestos warnings.

In *Harris*, 532 F. Supp. 2d at 1005, without requiring that Viad produce contracts, the Northern District of Illinois denied plaintiff's motion to remand after Viad removed the case under the federal officer statute. The court observed that, because the events at issue "took place so long ago, the defendants support removal with affidavits concerning past policies and practices of the U.S. Navy. Often times these affidavits come from the same limited pool of experts," who in Harris as here were Admiral Lehman and Dr. Cushing. Arguing that these affidavits were "not specific enough to demonstrate that Griscom-Russell acted under the direction of the Navy," plaintiff claimed that Viad had not shown that "Griscom-Russell acted under the direction of the Navy because it has not produced any contract or directive sent to it by the Navy." The court disagreed, finding that the general background and knowledge of Admiral Lehman and Dr. Cushing "at this preliminary stage" were sufficient to make out all required elements of the federal officer defense. The court stated: "The federal defense need only be colorable, not guaranteed to prevail," and recognized that requiring Viad to "win its case before it can have the

1  case removed . . . would defeat the purpose of the federal officer removal." ( *Id.* at 1004, 1005-

2  06.)

3          In *Ferguson*, 475 F. Supp. 2d at 731, the Northern District of Ohio concluded that that

4  Admiral Lehman's affidavit supported Viad's claim that product warnings were dictated by the

5  Navy and "no deviation from the warnings or lack thereof was permitted. . . ." The court

6  therefore found that Viad had invoked a colorable federal contractor defense sufficient to sustain

7  removal.

8          In *Nesbiet*, 399 F.2d at 211-12, the Southern District of New York determined that

9  General Electric presented a colorable military contractor defense because Admiral Lehman's

10 affidavit in that case "establishes for the purposes of this motion that the Navy's specifications

11 controlled all aspects of the design and manufacture of marine steam turbines, including the

12 nature of warnings to be affixed to or included with these turbines." Further noting Admiral

13 Lehman's assertion that any deviation from those specifications would result in rejection, the

14 court concluded that "[t]his proffer is sufficient" to satisfy the "colorable defense" test for federal

15 officer removal. (*Id.*)

16    **D.  PLAINTIFFS' "DISCLAIMER" DOES NOT DEFEAT REMOVAL**
          **AS SUBJECT MATTER JURISDICTION IS GROUNDED IN**
17        **THE EXISTENCE OF A FEDERAL DEFENSE**

18

19         Plaintiffs' contention that removal is improper because, by paragraph 7 of their complaint,

20 they have disclaimed a cause of action or recovery "for any injuries resulting from exposure to

21 asbestos containing dust caused by any acts or omissions [that Viad] committed at the direction of

22 an officer of the United States Government" has been rejected by numerous courts, most recently

23 *Reaser*. As the court stated in *Reaser*, slip op. at 12:

24        because removal pursuant to the federal officer removal statute is premised on the
          existence of a colorable federal defense, rather than the manner in which a
25        plaintiff's complaint is constructed, courts have found that neither a plaintiff's
          disclaimer nor its characterization of his claims is determinative.
26

27

28

Subject matter jurisdiction under § 1442(a)(1) is based on a federal defense, regardless of whether plaintiffs' claim rests solely upon state law. ( *Ballenger,* at 2; *Machnik,* 506 F. Supp. 2d at 103 n.1.)

Several other federal courts have explicitly addressed and rejected plaintiffs' disclaimer argument. In *Oberstar*, 2008 U.S. Dist. LEXIS 14023 at 8, the court held, citing *Machnik*, that "[b]ecause removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither Plaintiffs' disclaimer nor its characterization of their claims is determinative." See also *O'Connell*, 544 F. Supp. 2d at 58 n.12:

> O'Connell has expressly waived any claim based on defective design and 'any cause of action or recovery for any injuries resulting from exposure to asbestos dust caused by acts or omissions of a party committed at the direction of an officer of the United States Government.' In O'Connell's view, this disclaimer eliminates federal subject matter jurisdiction, including any that would attach under FORS. This is not the law. The removal statute creates an exception to the well pleaded complaint rule.

See also *Marley*, 545 F. Supp. 2d at 1274, where the court firmly rejected plaintiffs' argument that the disclaimer warranted remand:

> This disclaimer is circular. Its applicability depends on a determination of the core question in this case: whether the defendants' purported omission -- the failure to warn -- was required or caused by their contractual relationship with the Navy. If the failure to warn was required by the Navy, the disclaimer applies and the plaintiffs' claims fail as a matter of law. If the failure to warn was not required by the Navy, then the disclaimer does not apply. The problem with this argument is that the defendants have the right to have this question decided in federal court.

Finally, as the court observed in *Reaser v. Allis Chalmers Corporation Product Liability Trust et. al.* 2:08-cv-01296-SVW-SS (C.D. Cal. June 23, 2008) (slip op., Exh. 4 to declaration of Whitney A. Davis) at 13-14, plaintiffs' reliance on such cases as *Westbrook v. Asbestos Defendants*, 2001 WL 902642, at p. 2-3 (N.D. Cal. July 31, 2001), is inapposite, as by disclaiming "any claims arising out of work done on United States Navy ships," "the plaintiffs in Westbrook specifically waived any causes of action stemming from asbestos exposure on naval vessels; instead premising their claims on injuries arising from work done on private ships." As a

result, "the parties in *Westbrook* had no need to litigate any issue resembling the federal contractor defense. . . ." That is not the case here, where – by their refusal (Exhibit L to plaintiffs' motion) to agree to Viad's proposed stipulation (Exhibit K to plaintiffs' motion) – plaintiffs expressly declined to agree to any such waiver.

### E.  POSSIBLE TRANSFER OF THIS CASE TO THE MDL PRESENTS NO GROUND FOR REMAND

Plaintiffs contend that removal by Viad is a litigation tactic designed to force the matter to be transferred to the MDL. As clearly established *supra*, Viad has removed this case because it has a federal defense to plaintiffs' claim, which it is entitled by federal statute to litigate and ultimately prove in federal court.

In any event, as several courts have held, what a defendant's subjective motives may be is irrelevant in making a remand decision. (See *In re Maine Asbestos Cases*, 44 F. Supp. 2d 368, 374 n.2 (D. Me. 1999) ("the Supreme Court has declared subjective motives irrelevant on the remand decision, and it is not for this court to fashion a different rule tailored specifically to the demands of mass tort litigation.") Similarly, in *Harris*, 532 F. Supp. 2d at 1006 n.10, the Northern District of Illinois rejected plaintiff's argument and stated in denying his remand motion: "a defendant's motives for removal are not part of the analysis under § 1442(a)(1). Therefore, we decline to address this argument." (See also *Contois v. Able Indus. Inc.*, 523 F. Supp. 2d 155, 164 n.1 (D. Conn. 2007) ("The plaintiff also argues that the court should be wary of permitting removal of the case because of inefficiencies present in the asbestos litigation before the Multi-district Litigation Panel. This argument is irrelevant to the merits of the instant motion.")

Nor can this Court be influenced in its ruling on the remand motion by plaintiffs' theories concerning the MDL. The existence of the MDL and what happens to the lawsuit after removal has no bearing on this determination and should not be a factor considered in ruling on plaintiffs' motion. Although plaintiffs oppose transfer to the MDL, to the contrary the MDL is the appropriate and an adequate venue for this lawsuit.

1    Before the MDL was created, both federal and state courts faced "an asbestos litigation

2 crisis." (*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 598 (1997).)  The courts were

3 overwhelmed with asbestos lawsuits ("The most objectionable aspects of asbestos litigation can

4 be briefly summarized: dockets in both federal and state courts continue to grow; long delays are

5 routine, trials are too long; the same issues are litigated over and over; transaction costs exceed

6 the victims' recovery by nearly two to one; exhaustion of such assets threatens and distorts the

7 process; and future claimants may lose altogether.")  (*Id.*, citing Report of the Judicial Conference

8 Ad Hoc Comm. on Asbestos Litig., at pp. 2-3 (March 1991).)

9    In creating federal asbestos MDL No. 875, the court was persuaded that asbestos litigation

10 had reached a magnitude that threatened the administration of justice and hence required a new,

11 streamlined approach.  (*In re Asbestos Prods. Liab. Litig.* (No. VI), 771 F. Supp. 415, 418

12 (J.P.M.L. 1991).)  The panel found that the centralization of all federal asbestos personal injury

13 and wrongful death actions – in the words of 28 U.S.C. § 1407(a) – "will be for the convenience

14 of parties and witnesses and will promote the just and efficient conduct of such actions." (*Id.*)

15 Additionally, while the focus of the MDL is on stream-lining pre-trial matters and encouraging

16 settlements, the MDL can and does remand cases to the transferor courts for trial when

17 appropriate.

18    Given these factors, plaintiffs' substantive rights are well preserved within the MDL 875

19 structure.  Plaintiffs' objections and concerns about transfer have been fully addressed and met by

20 the MDL panel itself and should form no part of this Court's decision-making.

21                                      **IV.**

22 **PLAINTIFFS' REQUEST FOR ATTORNEY'S FEES/COSTS SHOULD BE DENIED**

23    For all of the above reasons, the plaintiffs' remand motion should be denied.

24 Notwithstanding, defendant Viad Corp submits brief opposition to the plaintiffs' claim for

25 attorney's fees and expenses.  The claim for attorney's fees and expenses should be denied.

26    The Court held in *Durham v. Lockheed Martin Corporation* 445 F.3d 1247, 1251 (9th Cir.

27 2006) that "[A]ttorney's fees in removal cases are not to be awarded as a matter of course:

28 "Absent unusual circumstances, attorney's fees should not be awarded when the removing party

1  has an objectively reasonable basis for removal.'" (*Durham,* 445 F.3d at 1250.)  Similarly, in

2  *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005) the United States Supreme Court rejected

3  the plaintiff's argument that there should be a "strong presumption in favor of awarding fees.""

4  More specifically, the Court noted that "if fee shifting were automatic, defendants might choose

5  to exercise this right only in cases where the right to remove was obvious. [Citation.] But there is

6  no reason to suppose Congress meant to confer a right to remove, while at the same time

7  discouraging its exercise in all but obvious cases." (*Id.* at 711.)  Thus, the standard for fee awards

8  in removal cases turns on the "reasonableness of the removal."

9    Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only

10  where the removing party lacked an objectively reasonable basis for seeking removal.

11  Conversely, when an objectively reasonable basis exists, fees should be denied." (*Id.* at 711.)

12    Herein, Viad Corp's removal is both justified and reasonable. The removal is grounded on

13  well founded, compelling declarations (see declarations of Admiral Lehman and Dr. Cushing.)

14  For all of these reasons, the attorney's fees/expense request should be denied.

15  

**V.**

16  

**CONCLUSION**

17    For all of the reasons stated herein, plaintiffs' motion for remand should be denied.

18

19

20  DATED:  July 30, 2008       CHARTER DAVIS, LLP

21

22  _____

23  WHITNEY A. DAVIS

24

25

26

27

28

OPPOSITION BY VIAD CORP TO PLAINTIFFS' MOTION FOR REMAND
CASE NO.  08-CV-03013-JSW

1  CASE NAME:        Jeri Redman v. A.W. Chesterton, et al.
   CASE NUMBER:      USDC Northern District of California No: 08-CV-03013-JSW
2

3

4                          PROOF OF SERVICE

5         I am a citizen of the United States and am employed in the County of Sacramento.  I am over
   the age of 18 years and not a party to the within cause; my business address is 1730 I Street, Suite 240,
6  Sacramento, California 95814.

7         On the date below, I served the within

8
   **OPPOSITION ON BEHALF OF VIAD CORP TO PLAINTIFF'S MOTOIN FOR REMAND**
9

10 on the parties in this cause as follows:

11
   [X]      VIA ELECTRONIC SERVICE: Complying with General Order 45, my electronic business
12          address is scl@charter-davis.com, and I caused such document(s) to be electronically served
            through the Pacer File & Serve system for the above-entitled case to the parties on the Service
13          List maintained on Pacer File & Serve Website for this case.  The file transmission was reported
            as complete and a copy of the Pacer File and Serve Receipt will be maintained with the original
14          document(s) in our office.

15
          I declare under penalty of perjury under the laws of the State of California that the foregoing
16 is true and correct and that this declaration was executed on July 30, 2008, at Sacramento,
   California.
17

18                                                    SUSAN C. LEON
19

20

21

22

23

24

25

26

27

28