Dean A. Hanley, Esq.   (State Bar No. 169507)
Deborah R. Rosenthal, Esq. (State Bar No. 184241)
PAUL & HANLEY LLP
1608 Fourth Street, Suite 300
Berkeley, California 94710
Telephone:  (510) 559-9980
Facsimile:   (510) 559-9970
dhanley@paulandhanley.com
drosenthal@paulandhanley.com

Attorneys for Plaintiff(s)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JERI REDMAN, individually and as successor-in-interest to RONALD REDMAN, deceased; and JERI REDMAN, AMY REDMAN, DAVID C. REDMAN, MARK REDMAN and PAUL REDMAN, as legal heirs of RONALD REDMAN, deceased,<br><br>   Plaintiffs,<br><br>vs.<br><br>A.W. CHESTERTON, et al.,<br><br>   Defendants. | Case No.: 08-cv-03013-JSW<br><br>**REPLY TO DEFENDANT VIAD CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**<br><br>Date: September 5, 2008<br>Time: 9:00 a.m.<br>Courtroom: 2, 17th Floor<br>Judge: Jeffrey White |

## TABLE OF CONTENTS

I.  INTRODUCTION ...........................................................................................................................1

II. LEGAL ARGUMENT ...................................................................................................................1

   A.  Viad fails to show that it could defend against plaintiffs' claims by asserting the government contractor defense ..............................................................................................1

      1.  Viad fails to refute plaintiffs' evidence that Viad's predecessors sold the injury-producing products commercially as well as to the U.S. Navy .................................2

      2.  Viad fails to establish that U.S. Navy requirements regarding warnings significantly conflict with state tort law establishing liability for failure to warn .........................4

   B.  No federal defense lies here, where plaintiffs do not allege any claims against Viad arising out of acts committed at the direction of a federal officer. ......................................8

      1.  Viad's failure to warn—the only acts relevant to the issue of Viad's liability—were not taken at the direction of a federal officer. ..................................................................8

      2.  Plaintiffs' disclaimer of causes of action arising out of acts taken at the direction of a federal officer is valid and properly eliminates the possibility that federal officer jurisdiction might apply ...............................................................................................10

   C.  There is no causal nexus between Viad's alleged conduct giving rise to plaintiffs' claimed injuries and Viad's acts performed under color of federal office. ..........................11

   D.  Viad's Opposition and conduct surrounding the briefing schedule constitute additional unusual circumstances supporting an award of fees and costs .............................................12

III. CONCLUSION............................................................................................................................13

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Nguyen v. Allied Signal, Inc.*, 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998) .......................... 9

*Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 (S.D. Ill. Oct 3, 2007) ................ 11

## STATE CASES

*Anderson v. Owens-Corning Fiberglas*, 819 P.2d 549 (Cal. 1991) ................................................ 8

*Anderson, supra*, 819 P.2d at 552 ................................................................................................. 9

*Anderson, supra*, 819 P.2d at 558-559 .......................................................................................... 9

## DOCKETED CASES

*Andregg v. A.W. Chesterton Co., et. al.*, San Francisco Super. Ct. Case No. 274208 ................... 4

*Simonetta v. Saberhagen Holdings, Inc., et. al.*, King County Super. Ct., Washington, Case No. 04-2-02874-4 ................................................................................................................ 4

*Simonetta v. Saberhagen Holdings, Inc., et. al.*, King County Super. Ct., Washington, Case No. 04-2-02874-4 ................................................................................................................ 5

## FEDERAL STATUTES

28 U.S.C. § 1442(a)(1) ................................................................................................................... 1

28 U.S.C. § 1442(a)(1) ................................................................................................................... 1

28 U.S.C. § 1442(a)(1) ................................................................................................................. 12

Fed. R. Evid. 602, 702 & 703 ........................................................................................................ 5

Fed. R. Evid. 602, 802 & 805 ........................................................................................................ 2

Fed. R. Evid. 802 ........................................................................................................................... 5

Fed. R. Evid. 1001-1004 ................................................................................................................ 5

## I. INTRODUCTION

Although Viad attests that the U.S. Navy addressed matters related to equipment and warnings through military specifications, Viad fails to offer into evidence any of these government orders. There is therefore no evidence that the government prohibited Viad from providing warnings regarding the asbestos hazards associated with maintenance and repair of its distilling units, which plaintiffs allege was the cause of Ronald Redman's cancer and death. Viad also offers no admissible evidence to refute that it manufactured and sold its asbestos-containing distilling units on the commercial market as well as to the U.S. Navy.

Since there is no evidence of a conflict between federal interest and state law, the government contractor defense is unavailable to Viad. Absent a colorable federal defense, Viad does not meet the first element necessary to establish federal officer jurisdiction over this state tort action pursuant to 28 U.S.C. § 1442(a)(1).

This Court also lacks federal officer jurisdiction because, as Viad states on page 13 of its Opposition, Viad would have to show that the Navy prevented Viad from fulfilling its state law duty to warn in order to meet the requirement that Viad's alleged liability arises out of acts taken at the direction of a federal officer or agency. Because the uncontroverted admissible evidence regarding the contents of military specifications governing warnings shows that the Navy recommended and required warnings, and thus did not prevent Viad from fulfilling its state law duty to warn, neither the second or third element necessary to provide a basis for removal under the federal officer statute, 28 U.S.C. § 1442(a)(1), is present here, either.

## II. LEGAL ARGUMENT

### A. Viad fails to show that it could defend against plaintiffs' claims by asserting the government contractor defense

Viad may not assert the government contractor defense in the absence of evidence that a significant conflict exists between U.S. Navy requirements and the state tort laws under which plaintiffs seek to impose liability against Viad. Viad failed to support its Notice of Removal

with evidence establishing such a conflict, and now it fails to support its Opposition to Plaintiffs' Motion for Remand with such evidence.

Plaintiffs present admissible evidence, which Viad fails to refute with admissible evidence, that (1) Viad sold the same asbestos-containing distilling units widely on the commercial market that it sold to the U.S. Navy, and (2) that the U.S. Navy imposed essentially the same duty to warn on Viad that California tort law imposes on the defendant. If the Court finds that either of these facts is supported by the evidence presented, the Court must remand this case because Viad cannot assert a colorable federal defense.

### 1. Viad fails to refute plaintiffs' evidence that Viad's predecessors sold the injury-producing products commercially as well as to the U.S. Navy

Through the inadmissible former testimony of two corporate witnesses, Viad attempts to lead this Court down a rabbit hole of tangled corporate history in an effort to obscure the fact that Griscom-Russell sold its asbestos-containing distilling plants commercially as well as to the U.S. Navy.

First, Viad's evidence "that BLH never made or sold products under that name [Griscom-Russell] or manufactured shipboard evaporators for the Navy" is unfounded hearsay. Peter Novak, former general counsel of Baldwin-Lima-Hamilton, did not begin working for the company until after Griscom-Russell had merged into BLH.[1] He lacks personal knowledge of the facts he attests to, his former testimony was provided in an action in which plaintiffs were not a party, and he testified about what others told him and what corporate records show. FED. R. EVID. 602, 802 & 805.

---

[1] Plaintiffs possess evidence establishing Viad's successor liability for Griscom-Russell products through a lengthy series of transactions: Griscom-Russell de facto merged with Baldwin-Lima-Hamilton (BLH), which merged with Armour & Co., which later merged with Greyhound Corporation. Greyhound Corp. changed its name to Greyhound Dial and then The Dial Corp. The Dial Corp. merged with several of its subsidiaries to become Dial Corp., which later changed its name to Viad. Plaintiffs do not present evidence establishing this history here due to the limited relevance of this issue to the pending matter and the extensive volume of such evidence. However, if the Court is included to deny remand on this basis, plaintiffs request an opportunity to present evidence and authority establishing Viad's successorship to the liabilities incurred by Griscom-Russell.

REPLY TO DEFENDANT VIAD CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND

PAGE 2

1        Similarly, former BLH salesman Henry Rentschler's testimony that the Eddystone facility of BLH did not manufacture distilling plants or sell distilling plants to the U.S. Navy also lacks foundation. Mr. Rentschler worked as a salesman at the Eddystone, Pennsylvania, manufacturing plant between 1954 and 1957 and again between 1962 and 1965. He did not work for Griscom-Russell before it merged with BLH; he did work at any of the company's other facilities; he was not involved in the design, product development nor manufacturing processes; he was not in the company's legal department, he was not an engineer, and he does not know the difference between a Navy distilling plant and a non-Navy distilling plant. (Rentschler Depo., Exhibit 2 to the Davis Decl. supporting Viad's Opposition, at 59:23-60:14, 61:15-62:8, 63:19-65:17, 74:6-19, 77:4-7) To the extent that he testifies about subjects that he lacks personal knowledge of, his testimony is unfounded.

        In addition to being inadmissible, the Novak and Rentschler testimony does not support the inference defendant asks this Court to make: Neither witness can or does attest that Viad never offered for sale on the commercial market the same products it sold to the U.S. Navy. Mr. Novak testifies that after Griscom-Russell merged into BLH, the marine-based desalinization plants (distilling units) became "a dead business" but that land-based versions of the product continued to be sold commercially. (Ex. 1 to Davis Decl. in Support of Viad's Opposition at 32:1-16.) Mr. Rentschler testifies that he knows of no desalinization units, marine or land-based, manufactured or sold out of Viad's Eddystone facility during the eight years he worked for the company. (Ex. 2 to Davis Decl. at 56:18-56:19 & 59:23-60:2.) Neither of these witnesses offers evidence that Viad never sold its distilling units widely on the commercial market. Their testimony thus does not refute the evidence offered by plaintiffs that Viad did sell essentially the same distilling units both commercially and to the Navy.

        Further supporting plaintiffs' evidence of defendant's admissions in its annual reports and advertisements (Exhibits E, F & M to Plaintiffs' Motion) is the testimony of Charles Cushing, defendant's own expert, who has personal knowledge from his own work with Griscom-Russell distilling plants, that defendant sold its marine distilling plants commercially.

In 2005, Cushing testified that "Griscom Russell manufactured both for the commercial market, as well as the Naval market, and the product was very, very similar." (Cushing Deposition Testimony in *Simonetta v. Saberhagen Holdings, Inc., et. al.*, King County Super. Ct., Washington, Case No. 04-2-02874-4 SEA, attached as Ex. 1 to the Declaration of Deborah Rosenthal in support of Plaintiffs' Reply, at 100:10-18.) In 2007, he testified that although he had never worked on or designed a Griscom-Russell distilling plant, "I've been involved with them on commercial vessels in the course of my career." (Cushing Deposition Testimony in *Andregg v. A.W. Chesterton Co., et. al.*, San Francisco Super. Ct. Case No. 274208, attached as Ex. 2 to the Rosenthal Decl. filed herewith, at 11:10-16.)

Because the uncontested evidence shows that defendant sold its alleged injury-producing product commercially for use aboard privately-owned vessels as well as to the U.S. Navy, the government contractor defense is unavailable to this defendant in this action.

### 2. Viad fails to establish that U.S. Navy requirements regarding warnings significantly conflict with state tort law establishing liability for failure to warn

Because plaintiffs allege Viad's liability for failure to warn only, the government contractor defense is only colorable in this case if there is a significant conflict between what the U.S. Navy required Viad to do with regard to warnings and what the above-described state tort laws required Viad to do.

In its opposition, Viad offers two items of evidence regarding warnings, the declarations of naval architect/engineers Charles Cushing and Retired Admiral Ben Lehman. This evidence is inadmissible, unfounded hearsay on the issue of warnings/military specifications. In addition, it does not show that a significant conflict exists between federal mandate and state law with regard to warnings.

First, Charles Cushing testifies that (a) U.S. Navy specifications precluded Viad and other manufacturers from affixing warnings to the products themselves, (b) the U.S. Navy alone determined whether certain equipment should have warnings and if so, what the content and format of those warnings should be, (c) manufacturers including defendant "would have had no

REPLY TO DEFENDANT VIAD CORPORATION'S OPPOSITION TO PLAINTIFFS' MOTION TO REMAND
PAGE 4

S:\Clients\Plaintiffs\R\Redman, Ronald 10267\Fed Court Action\VIAD remand motion - reply.doc

1 discretion to deviate" from whatever specifications the U.S. Navy issued regarding warnings, and (d) even if Viad had attempted to affix warnings to the distillers it made to the U.S. Navy, such warnings would not have been visible. (Cushing Decl. at ¶¶ 11-13.)

As set forth in Plaintiffs' Objections to Evidence filed herewith, Cushing is not qualified to testify as an expert regarding U.S. Navy specifications, industrial hygiene protocol, safety procedures, or warnings. FED. R. EVID. 602, 702 & 703. (See Ex. 1 to the Cushing Decl.) He never served on active duty in the U.S. Navy and spent less than a month total on board Navy ships while serving as a reservist. (Cushing Deposition Testimony in *Simonetta v. Saberhagen Holdings, Inc., et. al.*, King County Super. Ct., Washington, Case No. 04-2-02874-4 SEA, attached as Ex. 1 to the Declaration of Deborah Rosenthal filed in support of Plaintiffs' Reply, at 9:4-7 & 12:6-13:22.)

Furthermore, Cushing's testimony about the content of U.S. Navy specifications is hearsay, not subject to any exception, and is inadmissible pursuant to FED. R. EVID. 802. The contents of Navy specifications, which are necessary to the determination of whether the federal government required defendant to act in a manner at odds with state tort law, are not a matter of opinion but rather are facts that exist in recorded form, which Viad failed to offer into evidence. Except in certain circumstances not present here, evidence of the content of a writing must be proven by the writing itself. FED. R. EVID. 1001-1004.

In short, Cushing's testimony about Navy specifications is inadmissible, unfounded hearsay, and without knowing that the Navy specifications required, the rest of his testimony about warnings is irrelevant.

Second, Rear Admiral Ben J. Lehman (USN Retired) testifies that (1) equipment suppliers were prohibited from providing warnings on or with equipment supplied to the Navy "without the consent and approval of the Navy" or "without specific authority by way of an order or regulation," and (2) the Navy would not have approved warnings associated with asbestos "under the multitude of varying conditions likely to be encountered by Navy ships at sea, and especially at war" because "the Navy did not have the tools, equipment, or personnel

capabilities to meet or comply with any potential warnings or recommendations pertaining to the health hazards of asbestos aboard ship, especially under the exigencies of war." (Lehman Decl., ¶¶ 9 & 11-14.)

Again, naval architect and engineering education and experience does not qualify a person to testify as an expert on issues of U.S. Navy knowledge and regulations regarding every subject that arises in the military. Adm. Lehman lacks the qualifications necessary to offer an opinion on the Navy's industrial hygiene and occupational health programs, protocol, and capabilities. Furthermore, in testifying about government orders, regulations, and military specifications, declarant does not apply any scientific, technical, or other specialized knowledge to assist the trier of fact to understand the evidence; he merely paraphrases what the contents of documents purportedly state. Such hearsay testimony is inadmissible and unreliable.

Evidence that Viad could have provided the warnings required under state law, subject to consent and approval of the Navy, does not establish a conflict between federal interest and state law where there is no evidence that the Navy did not consent to or approve such warnings. Adm. Lehman's opinion that warnings of asbestos hazards "would not have been approved" is speculative, lacks foundation, and attempts to offer expert testimony on matter that is not properly the subject of opinion testimony—*i.e.*, the contents of military specifications and other written government orders and regulations.

As set forth in plaintiffs' motion, the military specification governing contents of instruction manuals was 15071. Although the precise language of this "Mil Spec" changed over time, **it consistently required manufacturers to provide warnings about hazards and safety precautions in instruction manuals to protect those operating, maintaining, and repairing the equipment from injury.** (Ex. I to Plaintiffs' Motion; see also earlier versions of Mil Spec 15071, attached as Exhibits 3 and 4 to Supp. Rosenthal Decl., filed herewith. Specifically, see Section 3.3.1.1(a) of Ex. 3, instructing manufacturers to provide "Safety notice (where high voltages or special hazards are involved)" in the general data of their instruction manuals" [parentheses in original]; Section 3.3.1.8.1(d) & (f) of Ex. 3; Section 3.3.1.2.7.1(d) & (e) of Ex.

4; and Section 3.3.1.2.5 of Ex. 4, instructing manufacturers to provide "[i]nformation [that] shall include routine and emergency procedures, and safety precautions ... to be observed in the starting, operating, stopping, and shutting down of the equipment").

Similarly, MIL-STD 129, the "Military Standard [governing] Marking for Shipment and Storage," also was periodically revised and updated by consistently required manufacturers to include conspicuous warnings of safety hazards related to the items being shipped. (*See, e.g.,* Exhibits 5-7 to Supp. Rosenthal Decl., filed herewith; specifically, for example, see Ex. 5 at p. 17 § 7.7; Ex. 6 at pp. 17-18 §§ 7.3.7, 7.5.1, 7.6 & 7.8; and Ex. 7 at p. 14a, §§ 5.2.2.4, 5.2.2.7 & 5.2.2.8, and p. 68.

Furthermore, it is clear from the introduction to the original MIL-STD-129 that this Military Standard, "published as a means of establishing uniform requirements for marking of shipments," was not a mechanism for the U.S. Navy's imposition of unmediated control over items supplied by government contractors. The U.S. Navy states that "repeated deviations from the approved Military standard [may be] granted," and that the Navy was open to receiving "[r]ecommended corrections, additions, or deletions" to this rule. (Ex. 5 to Supp. Rosenthal Decl., filed herewith, at p. ii; see also Ex. 6 at p. ii & p. 18 § 7.10.)

Included among the materials presented to show the hearsay basis of Adm. Lehman's opinion testimony are documents referred to as "examples of MILSPECS issued by the Navy" related to shipboard pumps. (See Ex. 2 to Lehman Decl. at ¶¶ 27 & 45-48, and exhibits attached thereto.) These documents, which are not actually Mil Specs, also support plaintiffs' evidence that the U.S. Navy both recommended and required warnings and accepted input from manufacturers who supplied shipboard equipment. The documents are correspondence between shipyards and the U.S. Navy discussing the requisite review and approval or revisions to preliminary text proposed for inclusion in instruction manuals. There is no evidence in these documents to suggest that the U.S. Navy prevented manufacturers from including warnings of asbestos hazards in their manuals. On the contrary, there is no mention of asbestos anywhere, the documents refer to the manufacturers' duty to comply with Mil Spec 15071, and in at least

one instance the shipyard overseeing equipment supply recommends to the U.S. Navy that cautionary text be included. (Ex. 8 to Supp. Rosenthal Decl., filed herewith.) There is no evidence that the U.S. Navy rejected this suggestion.

In sum, the only admissible evidence before this Court regarding the contents of Navy Mil Specs shows that the U.S. Navy did not prohibit manufacturers from warning of the safety hazards inherent in their asbestos-containing products but instead required manufacturers to warn of safety hazards both by marking shipments with cautionary notes and instructions and including such warnings and instructions in their technical manuals. Therefore, there is no evidence of a conflict between federal interest and state law such that the government contractor defense might apply here.

Furthermore, even if this Court found that a significant conflict between federal interest and state law existed, Viad still could not assert a colorable government contractor defense under *Boyle* because Viad cannot prove that its injurious product conformed to the reasonably precise specifications issued by the U.S. Navy regarding warnings.

### B. No federal defense lies here, where plaintiffs do not allege any claims against Viad arising out of acts committed at the direction of a federal officer.

#### 1. Viad's failure to warn—the only acts relevant to the issue of Viad's liability—were not taken at the direction of a federal officer.

Plaintiffs allege Viad's liability solely for those injuries arising out of Viad's failure to adequately warn or instruct users of hazards associated with asbestos exposure that existed during maintenance and repair of its asbestos-containing distilling units. Inadequate warning or failure to warn is a separate defect giving rise to a manufacturer's liability altogether apart from design or manufacturing defect. *Anderson v. Owens-Corning* Fiberglas, 819 P.2d 549, 553-554 (Cal. 1991).

Specifically, plaintiffs allege that Viad is liable to plaintiffs under either or both of the following legal theories:

1    <u>Negligence</u>: Viad failed to use reasonable care to warn or instruct about facts that made its distilling units likely to be dangerous. When Viad sold distilling units to the U.S. Navy, it knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner and that users would not realize the danger. Nonetheless, Viad failed to adequately warn of the danger or instruct on the safe use of the distilling units. A reasonable manufacturer/seller under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; and Viad's failure to warn or instruct was a substantial factor causing decedent harm. *Anderson, supra,* 819 P.2d at 558-559; Cal. Civil Jury Instructions (June 2008 ed.), Instruction 1222; Ex. A to Plaintiffs' Motion at 4:8 & 4:15-16; Ex B. to Plaintiffs' Motion at 3:1-28, 17:10-18:3, 20:27-23:4, 97:1-5 & 99:1-100:13.

<u>Strict Liability</u>: Decedent was harmed by a product sold by Viad that did not include sufficient warning of the potential hazard of exposure to asbestos. Viad's asbestos-containing distilling units lacked sufficient instructions or warnings of potential risks that were known or knowable to Viad by the use of scientific knowledge available at the time of sale. The potential risks presented a substantial danger to users which ordinary consumers would not have recognized, yet Viad failed to adequately warn of these potential risks. Decedent used the product in a way that was reasonably foreseeable to Viad and was harmed as a result of the lack of sufficient instructions or warnings. *Anderson, supra,* 819 P.2d at 552 & 558-560; Cal. Civil Jury Instructions (June 2008 ed.), Instructions 1200 and 1205; Ex. A to Plaintiffs' Motion at 4:9-10 & 4:17-18; Ex. B. to Plaintiffs' Motion at 23:5-26:17, 97:16-98:2 & 100:14-25.

Because plaintiffs' complaint is limited in this manner, the "acts taken at the direction of a federal officer" or "under color of federal office" must have been Viad's failure to adequately warn of the health hazards posed by Viad's asbestos-containing distilling plants in order for federal officer jurisdiction to exist. *See, e.g., Nguyen v. Allied Signal, Inc.,* 1998 U.S. Dist. LEXIS 15517 (N.D. Cal. 1998) at pp. 3-4.

This means two things: (1) Viad's substantial argument and evidence related to the U.S. Navy's control over the manufacture, design, and installation of equipment is irrelevant, and (2) federal subject matter jurisdiction does not exist absent evidence that the reason Viad failed to warn was that the U.S. Navy directed Viad not to warn.

As set forth above and in plaintiffs' motion, there is no admissible evidence showing that the U.S. Navy ever directed Viad not to warn persons working with its distilling plants of the danger of asbestos exposure. Rather, the U.S. Navy explicitly directed Viad to provide such warnings in their technical manuals. Viad failed to do so.

It is not enough for Viad to show that it committed some acts under the direction of the U.S. Navy. To establish that federal subject matter jurisdiction *over this action* exists, Viad must show that the allegations of liability and harm specific to this action arise out of the acts that Viad took at the direction of the U.S. Navy. Such a showing is essential because the defense exists to prevent government actors and agents. Without it, Viad is nothing more than a private entity acting in its capacity as such.

Where, as here, Viad is not being charged with liability for alleged harm resulting from government orders or regulations, there is neither legal authority nor public policy reason to extend the government contractor defense or federal officer jurisdiction to this private actor defendant. Such jurisdiction exists and should be reserved for government actors and their agents.

**2. Plaintiffs' disclaimer of causes of action arising out of acts taken at the direction of a federal officer is valid and properly eliminates the possibility that federal officer jurisdiction might apply**

Plaintiffs' disclaimer language in their Complaint presents an alternative reason why this Court lacks federal subject matter jurisdiction. As explained in plaintiffs' motion, a defense cannot be raised to a claim not alleged. Plaintiffs have the right to frame the litigation by selecting which theories and causes of action to assert. It is no more improper for plaintiffs to limit their claims through disclaimer language that it is for plaintiffs to waive certain claims by stipulation, to select one among many proper venues, to choose which witnesses to call and

which witnesses not to call at trial, etc. Strategic decisions are involved at every stage of a lawsuit, and they necessarily have various impacts on the course of the litigation. There is no authority for declining to give them effect where they are otherwise proper under the law.

Limiting the complaint does not provide a one-way benefit. On the contrary, it acts as a waiver of potentially meritorious claims that arguably benefit defendant more than plaintiffs by narrowing plaintiffs' potential for recovery. There is nothing unfair or improper about a voluntary waiver, and where its legal consequence destroys federal court jurisdiction, such consequence should be recognized by the Court.

While some U.S. District Courts have not recognized the power of similar disclaimer language to eliminate federal officer jurisdiction, other U.S. District Courts have, as identified in plaintiffs' motion. There is no binding authority one way or the other on the particular issue of plaintiffs' ability to plead around a particular defense using the disclaimer language that plaintiffs use in their Complaint.

Nonetheless, the disclaimer paragraph in plaintiffs' Complaint offers an *alternative* explanation as to why this Court lacks subject matter jurisdiction. Because the undisputed admissible evidence shows that Viad widely sold its asbestos-containing distilling units commercially, and because plaintiffs allege only that Viad is liable for its failure to warn of the asbestos hazards associated with its products and that the Navy did not prohibit warnings, federal subject matter jurisdiction does not exist regardless of whether this Court gives effect to plaintiffs' disclaimer language.

**C. There is no causal nexus between Viad's alleged conduct giving rise to plaintiffs' claimed injuries and Viad's acts performed under color of federal office.**

Where, as here, defendant fails to show that the Navy required it to refrain from issuing warnings about the dangers of asbestos, there is no causal connection between the acts performed under the government's orders and the claims brought by plaintiffs. The third prong of *Mesa* also is not met. (*See, e.g., Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 (S.D. Ill. Oct 3, 2007) at pp. 29-30.)

### D. Viad's Opposition and conduct surrounding the briefing schedule constitute additional unusual circumstances supporting an award of fees and costs

When Viad removed this case to federal court, Viad did so based solely on the allegation that federal subject matter jurisdiction existed based on 28 U.S.C. § 1442(a)(1) "because VIAD, as the alleged successors-in-interest to GRISCOM RUSSELL/DIAL CORPORATION, was acting under an officer or agency of the United States government, namely the United States Navy." Viad did not support its removal petition with any evidence and gave plaintiffs no further information regarding the legal or evidentiary basis for its contention that removal was proper. Moreover, despite being made aware of its fatal flaws, as of this writing Viad still has made no attempt to amend its removal petition to cure the defects therein.

Viad also filed an Opposition that is procedurally flawed. Viad's Memorandum of Points and Authorities runs 27 pages long, excluding introductory material, in violation of N.D. Cal. Local Rule 7-4(b), and the page numbers associated with the citations in the Table of Authorities are inaccurate, making it difficult for plaintiffs and for the Court to determine what authorities Viad relies on for the points it makes in its brief. In addition, Viad relies primarily on authorities from jurisdictions outside the Ninth Circuit and on U.S. District Court decisions that do not serve as precedent for this Court under the principle of stare decisis.

In addition, Viad's unusual conduct surrounding its deficient filings further supports plaintiffs' request for an award of reasonable expenses incurred. Viad obtained an extension in time to file its Opposition by attesting that the opinion of its naval engineering expert Charles Cushing was essential to its Opposition, and Mr. Cushing was out of the country until the day the Opposition was due. However, the Cushing Declaration supporting Viad's Opposition lacks foundation, is inadmissible, and is not the primary evidence supporting the Opposition. Viad appears to have obtained an extension under false pretenses.

If Viad had presented the Cushing and Lehman declarations and attached exhibits that support its Opposition in support of its Notice of Removal, plaintiffs would have had a month to review, research, and address the substantive matters involved in these proceedings. Instead, plaintiffs initially had only one week, and Viad, although it voiced no opposition to giving

plaintiffs an additional week to reply, refused to stipulate to such an extension, forcing plaintiffs to consume additional expense and effort preparing an ex parte application for an extension. Defendant's refusal to stipulate to the extension was made without substantial justification in light of the facts that (1) defendant had obtained an extension to prepare its opposition, such that a similar extension to plaintiffs to prepare their reply was just and reasonable, and (2) defendant did not intend to, and did not, oppose plaintiffs' ex parte application; it merely refused to stipulate to harass and oppress plaintiffs and cause them to incur additional delay and expense.

As of this writing, plaintiffs have incurred a total of $17,620 in costs as a result of the removal--$9,745 preparing plaintiffs' motion for remand, $875 preparing plaintiffs' ex parte application for an extension of time to reply, and $7,000 preparing plaintiffs' reply. (Rosenthal Declaration in Support of Motion at ¶¶ 18-22 & Supplemental Rosenthal Declaration filed with Reply at ¶¶ 10-13.) Plaintiffs request that the Court award this amount against Viad and its counsel and in favor of plaintiffs and their counsel for costs incurred as a result of Viad's improvident removal.

### III. CONCLUSION

For the foregoing reasons, plaintiffs respectfully request that this Court remand this case to the Superior Court of San Francisco, State of California, and award plaintiffs $17,620 in reasonable costs incurred as a result of the removal.

DATED: August 13, 2008

PAUL & HANLEY LLP

By: _____
Deborah R. Rosenthal,
Attorneys for Plaintiffs