IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JERI REDMAN, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>A W CHESTERTON COMPANY, et al.,<br><br>    Defendants.<br>_____/ | No. 08-03013 JSW<br><br>**ORDER DENYING MOTION TO REMAND** |

Now before the Court is the motion to remand filed by Plaintiffs Jeri Redman, Amy Redman, David C. Redman, Mark Redman, and Paul Redman (collectively, "Plaintiffs"). Also pending before the Court is Plaintiffs' administrative motion prohibiting transfer to to the federal asbestos multi-district litigation until after the motion to remand is decided. Having considered the parties' papers, relevant legal authority, and good cause appearing, the Court hereby DENIES Plaintiffs' motion to remand. This order renders the administrative motion moot and it is therefore DENIED.

**BACKGROUND**

Plaintiffs filed this case in San Francisco Superior Court against several defendants, including Viad Corp. ("Viad"), alleging that defendants' actions caused decedent Ronald Redman to be exposed to asbestos dust and that this exposure contributed to Ronald Redman's asbestos-related cancer and death. Plaintiffs brought claims for negligence, strict liability, false

1  representation, intentional tort, premises owner/contractor liability, unseaworthiness,
2  maintenance and cure, loss of consortium, false representation, and wrongful death, among
3  others.  (*See* Plaintiffs' State Court Complaint, Ex. A to Viad's Notice of Removal of Action.)
4  Plaintiffs allege that Viad specifically contributed to Ronald Redman's death by failing to warn
5  him of the asbestos-related dangers associated with the maintenance and repair of Viad's marine
6  distilling plants, which Plaintiffs allege were manufactured for sale to both the United States
7  Navy and to private industry for commercial use.  Plaintiffs expressly disclaim any cause of
8  action or recovery against Viad for any injuries resulting from exposure to asbestos containing
9  dust caused by any acts or omissions of Viad committed at the direction of an officer of the
10 United State Government.  Viad filed a Notice of Removal with this Court on June 18, 2008,
11 claiming federal officer jurisdiction pursuant to 28 U.S.C. § 1442(a)(1).  Plaintiffs now move to
12 remand this case back to San Francisco Superior Court.

**EVIDENTIARY ISSUES**

In opposing Plaintiffs' motion for remand, Viad offers evidence purporting to show why this Court has federal officer jurisdiction.  Plaintiffs raise evidentiary objections.

Plaintiffs object to the declarations of Ben J. Lehman, a retired Rear Admiral of the United States Navy, and Charles Cushing, a naval architect and marine engineer.  Both are offered by Viad to demonstrate that the Navy controlled the decision-making with respect to asbestos warnings on Viad's marine distilling plants.  (*See* Opposition Brief at 2, 4.)  Plaintiffs object to both declarations on the grounds that they are speculative and lack foundation, contain hearsay, are irrelevant, are not the proper subject of expert testimony, and attempt to prove the contents of a writing.  (*See* Objections to Evidence at 3-18.)  The Court finds that all of these objections are without merit, and that Lehman and Cushing's declarations provide a proper basis for the determination for Plaintiffs' Motion for Remand.

Ben Lehman is a retired Rear Admiral of the United States Navy, with knowledge in mechanical and marine engineering, naval architecture, naval engineering design, design

2

philosophy, and advanced stress analysis. (Declaration of Ben Lehman ("Lehman Decl.") ¶ 1.) While in the Navy, Lehman served as Ship Superintendent for several Navy shipyards. (*Id.*) Plaintiffs object to Lehman's testimony on the grounds that Lehman lacks personal knowledge to testify about industrial hygiene issues such as asbestos hazards or the Navy's knowledge about and protocol regarding safety standards and requirements regarding warnings of health hazards aboard Naval vessels. However, Lehman testifies that as a result of his Naval service, he was personally responsible for the creation of Navy specifications for the procurement of materials and machinery for use on Navy Ships. (*Id.*) Furthermore, Lehman testifies that as a result of his background, he is familiar with the construction and repair of Navy ships as well as the Navy regulations regarding asbestos products and their accompanying warnings. (*Id.* ¶ 2.) Thus, Lehman's testimony on these matters is based on his personal knowledge and is therefore admissible. *See* Fed. R. Evid. 602. The majority of Lehman's statements in his declaration are based on his personal knowledge. To the extent that some statements in his declaration are hearsay, the Court does not rely on those statements to adjudicate the motion to remand.

Next, the Lehman declaration is relevant to Plaintiffs' motion because Plaintiffs contend that the Navy had no control over the warning labels on Viad's marine distilling plants and that the Navy, just like any other commercial customer, merely purchased its marine distillation plants from a pre-existing catalogue of standard products that Viad offered. In contrast, Lehman states that beginning in the 1940s, the Navy had complete control over every piece of equipment and dictated every aspect of the equipment, without permitting any deviation by any of its contractors. (Lehman Decl. ¶ 9.) Thus, the Lehman declaration is relevant because it tends to make the existence of the Navy's control over the asbestos warnings more probable than it would be without the evidence. Lastly, to the extent that Lehman's testimony is not properly the subject of expert opinion and attempts to prove the contents of a writing, record, or photograph, the Court relies on Lehman's independent knowledge of the records, which are the proper subject of expert testimony. *See* Fed. R. Evid. 703.

3

Similarly, Charles Cushing is well qualified to testify on the subjects set forth in his declaration as a result of his education, knowledge, and experience as a naval architect. Cushing testifies that he has been directly involved in the design, construction, and/or conversion of more than 250 ocean-going vessels, both military and civilian, and, as a result, is personally familiar with Navy protocols and procedures regarding contracting practices. (Cushing Declaration ¶ 2.) This Court therefore relies on Cushing's declaration in the same manner that it relies on Lehman's declaration. To the extent Cushing offers evidence that is beyond his personal knowledge, irrelevant, lacking in foundation, hearsay, and not properly the subject of expert testimony, the Court does not rely on that evidence in this order.

## ANALYSIS

### A. Legal Standard on Motion to Remand.

Viad seeks removal of this case pursuant to § 1442(a)(1), under which a state civil action may be removed to federal court by "any officer ... of the United States or of any agency thereof, sued in an official capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1). A party seeking removal under § 1442(a)(1) must (1) demonstrate that it is a person within the meaning of the statute, (2) demonstrate that it acted under the direction of a federal officer, (3) raise a colorable federal defense to plaintiffs' claims, and (4) demonstrate a causal nexus between plaintiffs' claims and acts it performed under color of federal office. *Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).

Generally, there is a strong presumption against removal jurisdiction and, as a result, removal statutes are to be strictly construed against removal and defendants have the burden of establishing that removal jurisdiction is proper. *See Gaus v. Miles, Inc.*, 980 F.2d 564, 566-67 (9th Cir. 1992). Federal officer removal, however, is an exception to this general rule. Because the federal government can act only through its officers and agents, it would be difficult to find those to act on its behalf if it did not guarantee its officers and agents access to a federal forum.

4

*Durham* v. *Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). Therefore, "when federal officers and their agents are seeking a federal forum, we are to interpret section 1442 broadly in favor of removal." *Id*. at 1252.

### B.     Plaintiffs' Disclaimer of Claims Does Not Negate Federal Jurisdiction.

In their state court complaint, Plaintiffs specifically disclaim any cause of action or recovery against Viad for "any injuries from exposure to asbestos containing dust caused by any acts or omissions of a party committed at the direction of an officer of the United States Government." (Declaration of Deborah R. Rosenthal ("Rosenthal Decl."), Ex. A at 2-3.) As a result of this disclaimer, Plaintiffs argue that Viad's removal to this Court is unwarranted because there is no subject matter jurisdiction. Despite this disclaimer, Plaintiffs still seek damages arising out of Ronald Redman's exposure to asbestos while maintaining and repairing marine distilling plants produced by Viad on Navy ships. (*Id.*, Ex. B at 101.) As explained below, Viad can assert a federal defense. "Because removals pursuant to the federal officer removal statute are premised on the existence of a federal defense, rather than a plaintiff's artfully constructed complaint, neither plaintiffs' disclaimer nor its characterization of their claims are determinative." *Oberstar v. CBS Corp.*, 2008 U.S. Dist. LEXIS 14023, at *8 (C.D. Cal. Feb. 11, 2008) (citing *Machnik v. Buffalo Pumps Inc.*, 506 F. Supp. 2d 99, 103 n.1 (D. Conn. 2007)). Therefore, Plaintiffs' disclaimer is not determinative of whether federal jurisdiction is proper.

### C.     Removal is Proper because Viad has Satisfied the *Mesa* Factors.

In order to obtain removal under § 1442(a)(1), Viad must (1) demonstrate that it is a person within the meaning of the statute, (2) demonstrate that it acted under the direction of a federal officer, (3) demonstrate a causal nexus between Plaintiffs' claims and acts it performed under color of federal office, and (4) raise a colorable federal defense to Plaintiffs' claims.

5

*Mesa v. California*, 489 U.S. 121, 124-25, 134-35 (1989); *Fung v. Abex Corp.*, 816 F. Supp. 569, 571-72 (N.D. Cal. 1992).

### 1.   Viad is a person within the meaning of the statute.

Viad must demonstrate that it qualifies as a person within the meaning of the statute in order to seek removal pursuant to it. A "'purely legal person such as a corporation could be engaged in activities that amount to the implementation of a federal policy under the direction of a government officer' such that state court suits against those corporations could disrupt the execution of federal law." *Fung*, 816 F. Supp. at 572 (quoting *Ryan v. Dow Chemical Co.*, 781 F. Supp. 934, 946 (E.D.N.Y. 1992)). Therefore, Viad, as a corporation, is a person within the meaning of 28 U.S.C. § 1442(a)(1). *See id.*

### 2.   Viad acted under the direction of a federal officer.

Next, Viad must show that its actions were sufficiently controlled by a federal officer such that Viad's liability arising from such actions need to be adjudicated in federal court. If Viad "establishes 'only that the relevant acts occurred under the general auspices of' a federal officer, such as being a participant in a regulated industry, they are not entitled to § 1442(a)(1) removal." *Id.* (quoting *Ryan*, 781 F. Supp. at 947). Instead, Viad must show that the Navy had "direct and detailed control" over it. *Id.* In *Fung*, direct and detailed control was shown where the federal government contracted with the defendant to build submarines, monitored defendant's performance, ensured complete conformity by defendant with design specifications, and "required the defendant to construct and repair the vessels in accordance with the applicable and approved specifications incorporated into the contracts." *Id.* at 572-73.

Plaintiffs argue that there was no direct and detailed control by the Navy over Viad's ability to place asbestos warnings on marine distilling plants. To this end, they offer evidence which purports to show that the marine distilling plants purchased by the Navy were not specially ordered by the Navy to comport with Navy specifications. (Rosenthal Decl., Exs. E, F, H & O.) Instead, Plaintiffs claim the marine distilling plants were readily available on the

6

commercial market for anyone to purchase, including the Navy and therefore the absence of an asbestos warning was controlled by Viad, not the Navy. (Motion at 12.) However, Plaintiffs' evidence is insufficient to support these claims. First, although Plaintiffs offer a 1962 shareholder statement from Baldwin-Lima-Hamilton which indicates that Viad's predecessor company "supplied distilling plants to well over half of all the United States Ships in service," this does not prove or even permit an inference that Viad sold any marine distilling plants to non-Navy customers. (Rosenthal Decl., Ex. E at 2.) Plaintiffs also offer an instruction manual which they claim could be from a non-Navy marine distilling plant, but there is no support for Plaintiff's bare assertion. (*Id.*, Ex. H.)

In addition, Plaintiffs argue that even if there were direct control by the Navy, military specifications required Viad to provide a safety notice where special hazards may be present. (*See* Supplemental Rosenthal Declaration, Ex. 3.) However, the military specification may not even necessarily apply to asbestos-containing products because as Viad contends, the Navy was well aware of the dangers of asbestos, so asbestos exposure may not have been considered a "special hazard." (*See* Lehman Decl. ¶ 10.)

Viad, on the other hand, has provided sufficient evidence to demonstrate that the Navy did indeed have direct and detailed control over Viad's ability to place asbestos warnings on their marine-distilling plants. The Navy utilized a system of ship design and construction that established and set the designs of ships, and restricted any such deviations by any contractors because every item of equipment had to be compatible with other equipment, Navy shipyard practices, and crew training. (*See id.* ¶¶ 5, 7.) This level of control applied equally to warnings, as whether certain equipment used aboard Naval vessels should have warnings, and the content and format of those warnings was determined solely by the Navy. (*See* Cushing Decl. ¶ 11.)

Under similar circumstances, other courts have held that there was indeed a direct and detailed control over military contractors. In another asbestos action in the Central District of California, the court reviewed a similar declaration by Lehman and concluded that the

7

declaration "raised 'the inference that [defendant] did not provide a warning concerning the dangers of asbestos because the Navy did not permit any such warning.'" *Oberstar,* 2008 U.S. Dist. LEXIS 14023, at *12 (quoting *Nesbiet v. General Elec. Co.*, 399 F. Supp. 2d 205, 208 (S.D.N.Y. 2005)). Furthermore, the Lehman and Cushing declarations are sufficient to meet Viad's burden of demonstrating direct and detailed control. To demand more evidence than these declarations would "frustrate the purpose of section 1442(a)(1)." *Ballenger v. AGCO Corp.*, 2007 U.S. Dist. LEXIS 47042, at *10-11 (C.D. Cal. June 22, 2007). Therefore, Viad meets its burden of showing direct and detailed control by the Navy and a lack of discretion on Viad's part to place asbestos warnings on the products that they delivered to the Navy.

### 3. There is a causal nexus.

Next, Viad must show that there is a causal nexus between Viad's acts under color of federal office and Plaintiffs' claims. However, as explained above, Viad has provided sufficient evidence to show that it acted under the direct and detailed control of the Navy, and that the Navy prohibited Viad from placing any unauthorized asbestos warnings on its products. Plaintiffs' claims are for a failure to warn against asbestos exposure. Therefore, sufficient causal nexus exists between Viad's actions pursuant to Navy control and Plaintiffs' claims.

### 4. Viad raises a colorable federal defense to Plaintiffs' claims.

Finally, Viad must show that it has a colorable federal defense. *See Mesa*, 489 U.S. at 128; *Fung*, 816 F. Supp. at 573. Pursuant to the *Durham* policy favoring removal for federal officers, a defendant does not need to show a valid or likely successful federal defense, but merely a colorable one. *Id.*; *Durham*, 445 F.3d at 1252. Recognizing that "one of the most important reasons for removal is to have the validity of the defense of official immunity tried in a federal court," the Supreme Court rejected a "narrow, grudging interpretation" of § 1442(a)(1), rejecting the notion that the officer must virtually "win his case before he can have it removed." *Jefferson County v. Acker*, 527 U.S. 423, 431 (1999) (quoting *Willingham v. Morgan*, 395 U.S. 402, 407 (1969)).

8

In this case, Viad invokes the military contractor defense, which shields military contractors from state tort law liability for defects in military equipment supplied to the United States when: "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988).

In *Boyle*, plaintiff sued a military contractor for defective design of a helicopter escape hatch that opened outward instead of inward, rendering the door useless in cases where the helicopter crashed at sea because the water pressure prevented the hatch from opening. *Id.* at 503. In that case, the Supreme Court held that two unique federal interests were invoked which mandated the preemption of state law by federal law. *Id.* at 504. First, the dispute arose out of the performance of a governmental contract. *Id.* Second, and more importantly, there was a federal interest in getting the government's work done regardless of whether it was through an official performing his duty as a federal employee, or through an independent contractor performing through a procurement contract. *Id.* at 505. In *Boyle*, because the defendant built the helicopters pursuant to the federal government's express instructions, the Court held that the duty imposed by the federal government pre-empted the state law duty to warn. *Id.* at 507.

The Ninth Circuit further clarified the military contractor defense specifically in the context of a failure to warn claim, finding the contractor defense to be "inapplicable to a failure to warn claim in the absence of evidence that in making its decision whether to provide a warning...[defendant] was acting in compliance with reasonably precise specifications imposed on [it] by the United States." *Butler v. Ingalls Shipbuilding, Inc.*, 89 F.3d 582, 586 (9th Cir. 1996) (quotations omitted).

Plaintiffs argue that Viad's marine distillers were available to the general commercial market and therefore were not military equipment designed with unique military applications in mind. To that end, Plaintiffs provide several shareholder statements by Viad's predecessor-in-

9

interest and an operations manual for a "Navy Type" distilling plant as evidence. (*See* Rosenthal Decl., Exs. E, F, H & O.) However, the evidence provided by Plaintiffs is insufficient for the Court to reach the conclusion that Viad marketed and sold its marine distilling plants widely to private industry for commercial purposes and that the Navy was just another commercial purchaser. In this case, Viad has made a sufficient evidentiary showing that the United States Navy approved reasonably precise specifications and that the equipment conformed to those specifications, thus satisfying the first two *Boyle* factors.

As for the third *Boyle* prong, Viad must show that it warned the United States about the dangers in the use of the equipment that were known to Viad but not to the United States. To this end, Viad again refers to the testimony of Lehman and Cushing. Lehman testifies that "the United States Navy was aware of the dangers of asbestos by the 1940s. Despite such knowledge, the Navy did not provide any warnings." (Lehman Decl. ¶ 10.) In fact, the Navy's own occupational health program provided "training, engineering and administrative controls, personal protective equipment, and medical surveillance to prevent the hazards of asbestos to shipyard workers." (*Id.* ¶ 13b.) Finally, Lehman concludes that the "United States Navy, as the biggest user of asbestos in World War II, and thereafter in shipbuilding, was more knowledgeable about any hazard of asbestos than any of the vendors who supplied it." (*Id.* ¶ 13f.) Plaintiffs do not claim that third *Boyle* prong is not met, and offer no evidence to the contrary.

Although Viad has not necessarily established a valid federal defense, Viad need not prove so much at this preliminary stage of the proceedings. "Again, to establish the propriety of their removal, defendants must only show a 'colorable' federal defense, not a winning one." *Oberstar,* 2008 U.S. Dist. LEXIS 14023, at *13. In sum, Viad has shown that it is a person that acted under the direction of a federal officer, there is a causal nexus between its actions and Plaintiffs' claims, and it can assert a colorable federal defense. Therefore, federal officer jurisdiction is proper under § 1442(a)(1).

10

# CONCLUSION

For the foregoing reasons, the Court hereby DENIES Plaintiffs' motion to remand.

**IT IS SO ORDERED.**

Dated: September 30, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE

11