IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JERI REDMAN, et al.,

    Plaintiffs,

v.

A W CHESTERTON COMPANY, et al.,

    Defendants.

_____/

No. 08-03013 JSW

**ORDER DENYING MOTION FOR LEAVE TO FILE MOTION FOR RECONSIDERATION**

Now before the Court is the motion for leave to file a motion for reconsideration filed by plaintiffs Jeri Redman, Amy Redman, David C. Redman, Mark Redman and Paul Redman (collectively "Plaintiffs"). Plaintiffs request reconsideration of the Court order issued on September 30, 2008 denying Plaintiffs' motion to remand. Having carefully reviewed Plaintiffs' papers and considered the relevant legal authority, and good cause appearing, the Court hereby DENIES Plaintiffs' motion for leave to file a motion for reconsideration.

A motion for reconsideration may be made on one of three grounds: (1) a material difference in fact or law exists from that which was presented to the Court, which, in the exercise of reasonable diligence, the partying applying for reconsideration did not know at the time of the order; (2) the emergence of new material facts or a change of law; or (3) a manifest failure by the Court to consider material facts or dispositive legal arguments presented before entry of the order. Civ. L.R. 7-9(b)(1)-(3). In addition, the moving party may not reargue any written or oral argument previously asserted to the Court. Civ. L.R. 7-9(c).

1    Plaintiffs move for reconsideration for the Court to consider dispositive legal arguments
2 and evidence that they allege the Court failed to consider initially with regard to the motion to
3 remand. The Court considered the arguments and evidence now raised when considering
4 Plaintiffs' motion to remand and found them unpersuasive. Plaintiffs may not move for
5 reconsideration on the basis of any written or oral argument previously asserted to the Court.
6 Civ. L.R. 7-9(c).

**DISCUSSION**

8    A defendant may invoke the military contractor defense, which shields military
9 contractors from state tort law liability for defects in military equipment supplied to the United
10 States when: "(1) the United States approved reasonably precise specifications; (2) the
11 equipment conformed to those specifications; and (3) the supplier warned the United States
12 about the dangers in the use of the equipment that were known to the supplier but not to the
13 United States." *Boyle v. United Tech. Corp.*, 487 U.S. 500, 512 (1988). Plaintiffs argue that
14 Viad's distilling units were not built according to reasonably precise specifications at the
15 direction of the United States. Instead, Plaintiffs argue, Viad "manufactured and supplied its
16 marine distilling units to both the U.S. Navy and to private industry for commercial use" such
17 that the U.S. Navy's actions were more akin to selecting goods from a catalog, than specially
18 ordering them. (Motion at 4.) On this basis Plaintiffs claim that Viad's distilling units are not
19 military equipment entitling Viad to the protections of the military contractor defense.

20    Plaintiffs rely on *In re Hawaii Federal Asbestos Cases*, 960 F.2d 806, 806 (9th Cir.
21 1992). In that case, manufacturers of asbestos insulation sought to raise the miliary contractor
22 defense as a barrier to liability from personal injury claims. *Id.* at 808. The Ninth Circuit held
23 that the military contractor defense exists because allowing "the contractors who are hired to
24 manufacture [military] equipment to be sued for the injuries caused by it would impinge unduly
25 on the military's decision making process." *Id.* at 811. However:

26    [t]hese same concerns do not exist in respect to products readily available on
     the commercial market. The fact that the military may order such products

2

1  does not make them "military equipment."  The products have not been
2  developed on the basis of involved judgements made by the military but in response to the broader needs and desires of end-users in the private sector.

3  *Id.*  Where products have not been made pursuant to the specifications of the military, they are

4  not protected by the military contractor defense:

5  If, for example, a federal procurement officer orders, by model number, a
6  quantity of stock helicopters that happen to be equipped with escape hatches opening outward, it is impossible to say that the Government has a significant
7  interest in that particular feature.  That would be scarcely more reasonable than saying that a private individual who orders such a craft by model number
8  cannot sue for the manufacturer's negligence because he got precisely what he ordered.

9  *Id.* (quoting *Boyle v. United Technologies Corp.*, 487 U.S. 500, 509 (1988)).  The Court does

10  not disagree with this ruling, and in fact, abided by it in denying Plaintiffs' motion for remand.

11  As discussed below, however, there are factual differences that make the holding in *Hawaii*

12  *Federal Asbestos Cases* inapplicable in this case.

13  The critical issue in determining what constitutes military equipment is not merely

14  whether Viad sold marine distilling units to both the U.S. Navy and to commercial users.

15  Plaintiffs refer the Court to Mr. Cushing's testimony that Viad's commercially available

16  distilling unit was very similar to the product that Viad sold to the U.S. Navy.  (Motion at 6.)

17  However, even if the commercial units and the U.S. Navy units were substantially similar, there

18  are differences that could exist between the two types of units that might not be considered

19  "substantial," but would nonetheless be highly relevant.  For example, Mr. Cushing also

20  testified that "[w]hether certain equipment aboard U.S. Naval vessels should have warnings,

21  and the content and format of any such warnings, was determined by the U.S. Navy.  [Viad]

22  would have had no discretion whatsoever to affix any warnings of its own to products it

23  delivered to the U.S. Navy."  (Declaration of Charles Cushing ¶ 11.)  The presence or absence

24  of an asbestos warning, while not a "substantial" difference, would make a significant impact

25  on this case.  Even if Viad's commercial sales were dispositive of whether or not the military

26  contractor defense applies, *Hawaii Federal Asbestos Cases* is inapplicable here because there

27

28

3

was clear testimony in that case that the asbestos insulation sold by the appellant to the U.S. Navy "was exactly the same product sold by [appellant] in significant quantities to private industry." *In re Hawaii Federal Asbestos Cases*, 960 F.2d at 812. There is no such testimony in this case.

Instead, the real issue in determining what constitutes military equipment is whether or not the marine distilling units that Viad did sell to the U.S. Navy were created pursuant to the special needs of the U.S. Navy. The rationale behind the military contractor defense is to eliminate liability for contractors that are merely following the U.S. Navy's directions, not to eliminate liability for contractors that sell products to the U.S. Navy that are substantially similar to their commercial counterparts. *See id.* at 811. Whether the two types of products are substantially similar or identical is merely probative of whether or not the U.S. Navy products were specially ordered or ordered from already existing stock. In this case, the record revealed that the U.S. Navy had direct and detailed control over Viad's ability to place asbestos warnings on their marine distilling units. (*See* Declaration of Ben Lehman ¶¶ 5, 7; Cushing Decl. ¶ 11.) Again, *Hawaii Federal Asbestos Cases* is inapposite here. In that case, the appellant "simply failed to allege, let alone establish, that in making their decisions regarding warnings they were acting in compliance with 'reasonably precise specifications' imposed on them by the United States." *In re Hawaii Federal Asbestos Cases*, 960 F.2d at 813. In this case, the requisite evidence does exist in the form of the testimony of Lehman and Cushing.

Plaintiffs reiterate evidence in their motion that purports to show that the marine distilling units were not specially ordered by the U.S. Navy. Although the Court considered all of this evidence in denying Plaintiff's motion to remand, it will specifically readdress the evidence that Plaintiffs highlight in their motion for reconsideration. First, Plaintiffs point to two annual reports from Viad's predecessor stating that it supplied marine distilling units to "well over half of all the U.S. Ships in service." (Declaration of Deborah Rosenthal in support of Plaintiff's motion for remand, Ex. E at 2.) It is unclear what the phrase "U.S. Ships" means.

4

In *Marine Coatings of Alabama v. United States*, 71 F.3d 1558, 1562 (11th Cir. 1996), the court used the phrase to refer to U.S. Navy ships. In *Texaco Marine Servs. v. United States*, 44 F.3d 1539, 1544 (Fed. Cir. 1884) used the phrase "U.S. ships" to refer to any sea-going vessel documented under the laws of the United States. Regardless of what the phrase means, it does not show either that the U.S. Navy purchased its marine distilling units from a catalog of existing products, or that the U.S. Navy did not specially order its distilling units according to reasonably precise specifications. Second, Plaintiffs refer to two manuals for distilling plants, one for a "DD666 Class" Destroyer, and another for a "Navy-Type Low Pressure" distilling plant. (Rosenthal Decl. in support of Plaintiff's motion for remand, Exs. G, H.) These two manuals do not advance Plaintiffs' position unless Plaintiffs can also show either that the DD666 Class Destroyer distilling unit was one that the Navy ordered from a catalog of products also available to the general public, or that the DD666 Class Destroyer distilling units were not specially ordered by the U.S. Navy according to reasonably precise specifications. Third, Plaintiffs point to advertisements for Viad's marine distilling units. Again, Plaintiffs need to show more than the mere fact that Viad sold some distilling units to the general public. Lastly, the Court has already addressed Cushing's statements that U.S. Navy distilling units were very similar to the commercially available ones. The evidence that Plaintiffs presented is simply insufficient to rebut the testimony of Lehman and Cushing and overcome the policy of interpreting "section 1442 broadly in favor of removal." *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1252 (9th Cir. 2006). This Court did not manifestly fail to consider material facts of dispositive legal arguments. As such, there is no basis for reconsideration.

5

Accordingly, Plaintiffs' motion for leave to file a motion for reconsideration is DENIED.

**IT IS SO ORDERED.**

Dated: November 25, 2008

JEFFREY S. WHITE
UNITED STATES DISTRICT JUDGE